**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHRANDA CAMPBELL-SALAHUDDIN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00268 |
| | ) | Honorable Virginia M. Kendall |
| FORD MOTOR COMPANY; | ) | |
| UNITED AUTO WORKERS LOCAL 558; | ) | |
| and INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA (UAW), AFL-CIO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FORD MOTOR COMPANY'S ANSWER TO
SECOND AMENDED COMPLAINT TO VACATE ARBITRATION AWARD**

For its Answer to Plaintiff's Second Amended Complaint to Vacate Arbitration Award, filed on or about March 20, 2018 (Doc. #20) ("Second Amended Complaint"), defendant Ford Motor Company ("Ford" or "Defendant") respectfully submits the following:

1.      This is a proceeding to set aside the Arbitration Award and to remand pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and the standards imposed by or derived from the Federal Arbitration Act (9 U.S.C. § 10(a)(1)-(2)) ("FAA") for rehearing and a fair and impartial Arbitration ruling free of corruption, fraud or undue means and/or free of evident partiality or corruption in the arbitration process.

**ANSWER**:   **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.**

## THE PARTIES

2.      Plaintiff, Shranda Campbell-Salahuddin ("Salahuddin") is a resident and citizen of Schererville, Indiana.

**ANSWER**:      **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

3.      Defendant Ford Motor Company ("Ford") operates the Ford Chicago Stamping Plant (the "Stamping Plant") in Cook County, Illinois and within this judicial district.

**ANSWER**:      **Admitted.**

4.      Defendant The United Automobile, Aerospace and Agricultural Implement Workers of America ("International UAW") is a labor union with a primary place of business located at 8000 East Jefferson, Detroit, Michigan.

**ANSWER**:      **Admitted.**

5.      Defendant United Auto Workers Local 588 (the "Local UAW") is a local branch of The United Automobile, Aerospace and Agricultural Implement Workers of America labor union with a primary place of business located at 21540 Cottage Grove Avenue, Chicago Heights, Illinois, and within this judicial district.

**ANSWER**:      **Admitted.**

## JURISDICTION AND VENUE

6.      Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C.

        § 185 as this matter involves a federal question.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

7.      Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Chicago, Illinois and/or Chicago Heights, Illinois and were all within the Northern District of Illinois and Defendants Ford and Local UAW reside in this judicial district and International UAW does business in this judicial district.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

8.      The Ford Stamping Plant manufactures automobile parts and components.

**ANSWER**:      **Admitted.**

9.      The Ford Stamping Plant is located in Chicago Heights, Illinois, in the Northern District of Illinois, and regularly does business in  Illinois.

**ANSWER**:      **Admitted.**

10.      Ford regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER**:      **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

11.      Defendant International UAW is a labor union representing hourly workers directly, and through its local chapter, the Local UAW.

**ANSWER**:      **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.   To the extent a further response is required, Ford admits the allegations.**

12.      The International UAW and Local UAW both represent union members who work at Ford's Chicago Stamping Plant.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford admits the allegations.

13.     The International UAW and Local UAW represent Chicago Stamping Plant union members in union disputes in the Northern District of Illinois.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford admits only that the International UAW and Local UAW represent hourly workers, including those employed at Ford's Chicago Stamping Plant, and denies any remaining allegations.

14.     The International UAW regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

15.     The Local UAW regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

16.     Plaintiff Salahuddin was a member of Defendant International UAW.

**ANSWER**:     Admitted.

17.     Plaintiff Salahuddin was a member of the Local UAW.

**ANSWER**:     Admitted.

18.     Plaintiff was an employee at Ford Motor Company prior to August 29, 2016.

**ANSWER**:    **Admitted.**

19.    On or about August 29, 2016, Ford terminated Plaintiff's employment.

**ANSWER**:    **Admitted.**

20.    Plaintiff grieved her discharge from Ford.

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.**

21.    This was permitted pursuant to the International UAW and Ford's Collective Bargaining Agreement.

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.**

22.    Plaintiff began the grievance process on August 29, 2016.

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement on or about August 29, 2016 with respect to Plaintiff's termination, otherwise denied.**

23.    Plaintiff initially grieved her discharge with the assistance of the Local UAW.

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.**

24.    Plaintiff initially grieved her discharge through the Local UAW.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

25.    Plaintiff's grievance resulted in an arbitration hearing (the "Arbitration") on or about October 17, 2017.

**ANSWER**:    Admitted that the labor arbitration between Ford and the Union under the applicable collective bargaining agreement with respect to the Union's grievance of Plaintiff's termination took place on October 17, 2017, otherwise denied.

26.    Arbitrator Katheryn A. VanDagens ("VanDagens") conducted the Arbitration.

**ANSWER**:    Admitted that Katheryn A. VanDagens served as the duly appointed umpire for the arbitration hearing on October 17, 2017 between Ford and the Union, otherwise denied.

27.    Arbitrator VanDagens practices law in Chicago Illinois.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

28.    Arbitrator VanDagens conducts arbitrations in Chicago Illinois.

**ANSWER**: Admitted.

29.    Arbitrator VanDagens regularly does business in the Northern District of Illinois.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

30.    The arbitration in this matter took place in the Northern District of Illinois.

**ANSWER**:    **Admitted that the arbitration hearing of October 17, 2017 between Ford and the Union took place in the geographical area comprised by the judicial district known as the Northern District of Illinois.**

31.    Jurisdiction and venue are appropriate in the Northern District of Illinois.

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

### FORD BREACHED ITS CONTRACTUAL OBLIGATIONS UNDER THE COLLECTIVE BARGAINING AGREEMENT BY TERMINATING PLAINTIFF WITHOUT CAUSE

32.    In 2015, Ford and the International UAW executed a contract titled: Agreements Between the UAW and the Ford Motor Company (hereafter, "Collective Bargaining Agreement" or "CBA").

**ANSWER**:    **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

33.    Ford had a duty to honor its obligations under the CBA with respect to UAW members' workplace rights.

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

34.    As part of the CBA, Ford and the IUAW agreed that only had unilateral authority to discipline and discharge employees if the discipline and discharge was "for cause":

> The Company retains the sole right to discipline and discharge employees for cause, provided that in the exercise of this right it will not act wrongfully or unjustly or in violation of the terms of this Agreement…Complaints that the Company has violated this paragraph may be taken up through the Grievance Procedure provided in this Agreement.

CBA, at Art. IV, Sec. 3 (Discipline and Discharge (Vol. I, p. 17)).

**ANSWER**:    **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

35.    When Ford terminated Plaintiff, it breached its obligations under CBA  Art. VII, Sec. 3 by terminating Plaintiff without cause where::

   a.   Ford failed to prove accusations that Plaintiff "bumped" another person at Ford's Stamping Plant;

   b.   Evidence and testimony corroborated that Plaintiff was not at the alleged scene of the alleged "bumping" event;

   c.   Ford failed to prove accusations that any "bump" was "intentional";

   d.   The discipline issued to Plaintiff was not reasonable and consistent within Ford's Stamping Plant's standard discipline for similar charges;

   e.   Ford's investigation was biased against the  Plaintiff;

   f.   Ford disregarded Miguel Astorga's and Herbert Simpson's interview statements which did not support for Ford's decision to terminating Plaintiff;

   g.   Ford did not interview identified witnesses Mike (the Company hourly team leader), Dede Perkins and Loretta to determine  if Plaintiff complained about the uncleanliness of the women's bathrooms or whether cleaning personnel who complained about Plaintiff had a motive to fabricate allegations against her;

   h.   Grant Crowley, the reviewing Labor Relations representative who interviewed witnesses recommended that Plaintiff not be terminated based on the testimony he obtained;

8

i.  Ford's records indicate an intention to summarily terminate Plaintiff even before her in-plant hearing;

j.  Ford's records indicate its bias against her where Plaintiff was terminated several days before her in-plant hearing at which she was terminated.

*See*, UAW Post Hearing Brief ("Ex. A").

**ANSWER**:    **Denied.**

### A BIASED ARBITRATOR INSTEAD OF A DESIGNATED "UMPIRE" WAS SELECTED TO ARBITRATE PLAINTIFF'S FOURTH STAGE GRIEVANCE

36.    By breaching the CBA and terminating Plaintiff without cause, Ford caused Plaintiff to suffer damages, including lost wages, the value of lost benefits, pain, suffering and emotional distress.

**ANSWER**:    **Denied.**

37.    Pursuant to the CBA, Ford and the IUAW also agreed:

When an employee . . . has a grievance against the Company, it shall be processed in accordance with the Grievance Procedure hereinafter provided.

CBA, at Art. VII, Sec. 1 (Vol. I, at p. 45).

* * *

**ANSWER**:    **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

38.    Plaintiff, through the Local UAW filed a grievance that her rights under Art. IV, Sec. 3 of the CBA were violated.

9

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.**

39.    Plaintiff grieved her discharge from Ford as permitted pursuant to the International UAW and Ford's Collective Bargaining Agreement, beginning the grievance process on August 29, 2016.

**ANSWER**:    **Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, beginning on or about August 29, 2016, otherwise denied.**

40.    When a grievance gets to the "Fourth Stage" of the grievance process, the CBA provides it may be appealed to an "Umpire":

> If a satisfactory disposition is not made of a grievance by the Review Board and if the grievance is the type of case upon which the Umpire is empowered to rule, the case may be appealed by the National Ford Department of the International Union to the impartial Umpire hereinafter provided for, in accordance with the following provisions . . .

CBA, at Art. VII, Sec. 8 (Vol. I, at p. 53).

**ANSWER**:    **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

41.    When Plaintiff's grievance reached the end of the Third Stage in the grievance process, the International UAW and the Local UAW, on behalf of Plaintiff appealed the matter to the Umpire.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, including at the Fourth Stage, otherwise denied.

42.    The International UAW, through its representative Reggie Ransom presented Plaintiff's Fourth Stage Grievance.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, including at the Fourth Stage, and that Reggie Ransom appeared on behalf of the Union at the arbitration hearing, otherwise denied.

43.    The Local UAW served as the nominal party with respect to Plaintiff's Fourth Stage grievance.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.    To the extent a further response is required, Ford denies the allegations.

44.    Plaintiff remained the real party-in-interest with respect to her Fourth Stage Grievance.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.    To the extent a further response is required, Ford denies the allegations.

45.    At a Fourth Stage Grievance, the CBA requires the parties use one of specifically designated persons as an "Umpire":

> The Umpire shall maintain an office where all notices and briefs required to be filed with him may be delivered.

CBA, at Art. VII, Sec. 12 (Vol. I, at p. 55).

11

The parties shall establish a schedule of Umpire hearings which assures that all Units with pending cases are accorded equality of opportunity to have cases heard by the Umpire. . . .

CBA, at Art. VII, Sec. 13(a) (Vol. I, at p. 56).

The Umpire may make such investigation as he/she may deem proper. The Umpire will hold hearings open to the parties and may examine the witnesses of each party and each party shall have the right to cross- examine all witnesses produced and to make a record of such proceedings.

CBA, at Art. VII, Sec. 13(b) (Vol. I, at p. 56).

It shall be the obligation of the Umpire to the Company and the Union to rule on cases heard by him/her within thirty (30) days after the hearing. **Priority shall be given to deciding discharge cases.** If, for good and proper reasons additional time is required, the Umpire may request an extension of the time limits set forth above by the parties and a reasonable extension thereof shall be granted.

CBA, at Art. VII, Sec. 14 (Vol. I, at p. 56) (emphasis added).

**ANSWER**: **Ford denies Plaintiff's alleged interpretation of the collective bargaining agreement, and admits only that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves.**

46.     Ford and the Local UAW and International UAW did not present Plaintiff's Fourth Stage Grievance to the Umpire designated by the CBA.

**ANSWER**:     **Denied.**

47.     A person other than the "Umpire" was selected to arbitrate Plaintiff's Fourth Stage Grievance.

**ANSWER**:     **Denied.**

48.     Arbitrator VanDagens was selected to arbitrate Plaintiff's Fourth Stage Grievance.

12

**ANSWER**:    **Admitted.**

49.    VanDagens served as the arbitrator (the "Arbitrator") in that matter.

**ANSWER**:    **Admitted that the umpire for the labor arbitration of October 17, 2017 was Katheryn A. VanDagens.**

### AN AWARD RESULTING FROM CORRUPTION, FRAUD OR UNDUE MEANS, OR AN ARBITRATOR'S "EVIDENT PARTIALITY" SHOULD BE REMANDED

50.    The Federal Arbitration Act requires that:

(a)  In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

> (1)  where the award was procured by corruption, fraud, or undue means;
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;

* * *

9 U.S.C. § 10(a)(1)-(2) (2018).

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

51.    VanDagens, on information and belief had never previously arbitrated a case with Ford.

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

52.    VanDagens' brother is Doug VanDagens.

**ANSWER**:    **Admitted.**

53.    Doug VanDagens is a member of Ford's Senior Management.

**ANSWER**: **Admitted that Doug VanDagens is a Global Director, Connected Services Solutions at Ford Motor Company, otherwise denied.**

54.     Doug VanDagens is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B).

**ANSWER**: **Admitted.**

55.     Doug VanDagens has worked at Ford for 31 years.

**ANSWER**: **Admitted.**

56.     As an attorney, Arbitrator VanDagens owed a duty to disclose conflicts of interest.

**ANSWER**: **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

57.     As an attorney, Arbitrator VanDagens owed a duty to avoid the appearance of impropriety.

**ANSWER**: **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

58.     Arbitrator VanDagens is a member of the National Academy of Arbitrators. (Ex. C).

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

59.     Arbitrator VanDagens serves on the National Academy of Arbitrators' Board of Governors. (Ex. C).

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

60.     The National Academy of Arbitrators has a Code of Professional Responsibility for Arbitrators of Labor Management Disputes. (Ex. D).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

61.     The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes requires that an arbitrator disclose conflicts of interest. (Ex. D, at pp. 8-9).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

62.     The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes considers disclosures "required." (Ex. D, at p. 8).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

63.     The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes places the burden of disclosure on the arbitrator. (Ex. D, at p. 9).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

64.     Under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, prior to acceptance of an appointment, an arbitrator must disclose to the parties involved any close personal relationship or other circumstance, which might reasonably raise a question as to the arbitrator's impartiality. (Ex. D, at p. 9).

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

65.    Under The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, if the arbitrator believes or perceives that there is a clear conflict of interest, the arbitrator should withdraw, irrespective of the expressed desires of the parties.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

66.    Under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

a.    That her brother is Doug VanDagens;

b.    That her brother is a member of Ford's Senior Management;

c.    That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

d.    That her brother has worked at Ford for 31 years.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

67.    Arbitrator VanDagens serves on the American Arbitration Association's ("AAA") National Roster of (Employment) Neutrals. (Ex. C).

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

68.    Arbitrator VanDagens serves on the labor arbitrator panels of the AAA. (Ex. C).

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

69.    The AAA has an official "Statement of Ethical Principles." (Ex. E).

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

70.    Arbitrators serving on the AAA's National Roster of (Employment) Neutrals have a duty to abide by the AAA Statement of Ethical Principles.

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

71.    Arbitrators serving on the labor arbitrator panels of the AAA have a duty to abide by the AAA Statement of Ethical Principles.

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

72.    Under the AAA Statement of Ethical Principles, when an arbitrator or mediator is selected from a list of potential neutrals, (s)he is required to disclose the existence of interests or relationships that are likely to affect impartiality or that might reasonably create an appearance that (s)he is biased against one party or favorable to another. (Ex. E).

**ANSWER**:    **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

73.     Under the AAA Statement of Ethical Principles, there is judicial oversight for arbitrator impartiality, as arbitrator bias is one of the grounds for vacating an award.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

74.     Under the AAA Statement of Ethical Principles, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

     a.     That her brother is Doug VanDagens;

     b.     That her brother is a member of Ford's Senior Management;

     c.     That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

     d.     That her brother has worked at Ford for 31 years.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.**

75.     Under the AAA Statement of Ethical Principles, there should be judicial oversight for VanDagens' breach of her duties to the Plaintiff, as arbitrator bias is one of the grounds for vacating an award.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.**

76.     The AAA also has a Code of Ethics for Arbitrators in Commercial Disputes. (Ex. F).

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

77.     Canon II of the AAA Code of Ethics for Arbitrators in Commercial Disputes requires that an "disclose any interest or relationship likely to affect impartiality or which might create an appearance of partiality." (Ex. F, at Cannon II).

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

78.     Arbitrator VanDagens had a duty to follow the AAA Code of Ethics for Arbitrators in Commercial Disputes.

**ANSWER**:  **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

79.     Under the AAA Code of Ethics for Arbitrators in Commercial Disputes, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the  following:

      a.     That her brother is Doug VanDagens;

      b.     That her brother is a member of Ford's Senior Management;

      c.     That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

      d.     That her brother has worked at Ford for 31  years.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford denies the allegations.

80.     Arbitrator VanDagens serves on the labor arbitrator panels of the Federal Mediation and Conciliation Service ("FMCS"). (Ex. C).

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

81.     The FMCS has a Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators, FMCS and AAA ("FMCS Code of Professional Responsibility"). (Ex. G).

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

82.     The FMCS Code of Professional Responsibility provides that "[e]ssential personal qualifications of an arbitrator include honesty, integrity, impartiality and general competence in labor relations matters." (Ex. G, at p. 5).

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

83.     The FMCS Code of Professional Responsibility provides that "[a]n arbitrator shall not engage in conduct that would compromise or appear to compromise the arbitrator's impartiality." (Ex. G, at p. 6).

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

84.     The FMCS Code of Professional Responsibility provides that "[b]efore accepting an appointment, an arbitrator must disclose directly or through the administrative agency involved, any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest." (Ex. G, at p. 7).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

85.     The FMCS Code of Professional Responsibility provides that "[a]n arbitrator must not permit personal relationships to affect decision-making. Prior to acceptance of an appointment, an arbitrator must disclose to the parties or to the administrative agency involved any close personal relationship or other circumstance, in addition to those specifically mentioned earlier in this section, which might reasonably raise a question as to the arbitrator's impartiality." (Ex. G, at p. 8).

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

86.     Under the FMCS Code of Professional Responsibility, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

    a.      That her brother is Doug VanDagens;

    b.      That her brother is a member of Ford's Senior Management;

    c.      That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

      d.      That her brother has worked at Ford for 31 years.

**ANSWER**: **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford denies the allegations.**

87.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother is Doug VanDagens.

**ANSWER**: **Denied that Arbitrator VanDagens "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so. Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

88.    By failing to disclose to Salahuddin that her brother is Doug VanDagens, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.      as an attorney;

      b.      under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.      under the the AAA Statement of Ethical Principles;

      d.      under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

      e.      under the FMCS Code of Professional Responsibility.

**ANSWER**: **Denied.**

89.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother is a member of Ford's Senior Management.

**ANSWER**:     **Denied that Arbitrator VanDagens "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.  Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

90.     By failing to disclose to Salahuddin that her brother is a member of Ford's Senior Management, Arbitrator VanDagens breached duties she owed Salahuddin:

        a.      as an attorney;

        b.      under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

        c.      under the AAA Statement of Ethical Principles;

        d.      under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

        e.      under the FMCS Code of Professional Responsibility.

**ANSWER**:     **Denied.**

91.     Arbitrator VanDagens failed to disclose to Salahuddin that her brother is Global Director, Connected Services Solutions at Ford Motor Company.

**ANSWER**:     **Denied that Arbitrator VanDagens "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.  Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

92.     By failing to disclose to Salahuddin that her brother is Global Director, Connected Services Solutions at Ford Motor Company, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.     as an attorney;

      b.     under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.     under the the AAA Statement of Ethical Principles;

      d.     under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

      e.     under the FMCS Code of Professional Responsibility.

**<u>ANSWER</u>**:     **Denied.**

93.     Arbitrator VanDagens failed to disclose to Salahuddin that her brother has worked at Ford for 31 years.

**<u>ANSWER</u>**:     **Denied that Arbitrator VanDagens "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so. Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

94.     By failing to disclose to Salahuddin that her brother that her brother has worked at Ford for 31 years, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.     as an attorney;

      b.     under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

c. under the the AAA Statement of Ethical Principles;

d. under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

e. under the FMCS Code of Professional Responsibility.

**ANSWER**: **Denied.**

95. Arbitrator VanDagens failed to disclose to Salahuddin she had a conflict of interest.

**ANSWER**: **Denied that Arbitrator VanDagens "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so and that a conflict of interest existed. Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

96. By failing to disclose to Salahuddin that she had a conflict of interest in serving as an Arbitrator in Plaintiff's Arbitration, Arbitrator VanDagens breached duties she owed Salahuddin:

a. as an attorney;

b. under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

c. under the the AAA Statement of Ethical Principles;

d. under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

e. under the FMCS Code of Professional Responsibility.

**ANSWER**: **Denied.**

97.     Plaintiff Shranda Campbell is also a named plaintiff in a class action lawsuit currently pending in this Court entitled *Van et al v. Ford Motor Company* 14 C 8708.

**ANSWER**:     **Admitted that Plaintiff is a named plaintiff in Case No. 14-CV-8708 pending in the United States District Court for the Northern District of Illinois, otherwise denied.**

98.     On January 5, 2018, Judge Sharon Johnson Coleman recused herself from the *Van* case, 14-CV-8708, N.D. Ill. (Doc. # 215), on the grounds that a family member recently became employed at Ford.

**ANSWER**:     **The record and docket in Case No. 14-CV-8708 pending in the United States District Court for the Northern District of Illinois speak for themselves, otherwise denied.**

99.     Arbitrator VanDagens had a duty to avoid an appearance of impropriety.

**ANSWER**:     **These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

100.     Arbitrator VanDagens did not recuse herself.

**ANSWER**:     **Admitted.**

101.     By failing to recuse herself, VanDagens breached her duty to avoid the appearance of impropriety.

**ANSWER**:     **Denied.**

102.     By failing to avoid an appearance of impropriety, Arbitrator VanDagens breached duties she owed Salahuddin:

        a.     as an attorney;

26

      b.      under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.      under the the AAA Statement of Ethical Principles;

      d.      under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

      e.      under the FMCS Code of Professional Responsibility.

**ANSWER**:    **Denied.**

103.    There was evident partiality in the Arbitration Award when it was issued by VanDagens in favor of Ford and against Plaintiff.

**ANSWER**:    **Denied.**

**THE IUAW AND LOCAL UAW UNFAIRLY REPRESENTED PLAINTIFF**

104.    Local UAW Representative Matt Kolanowski ("Kolanowski") attended Plaintiff's Arbitration.

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

105.    At the conclusion of the Arbitration hearing, Kolanowski gave Arbitrator VanDagens a ride to her vehicle.

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

106.    During the course of the drive, VanDagens informed Kolanowski that her brother worked at Ford.

**ANSWER**:    **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

27

107. The Arbitrator issued the Arbitration Award on December 13, 2017.

**ANSWER**: **Admitted.**

108. Thereafter, in mid-December, 2017, IUAW Representative Reggie Ransom ("Ransom") spoke with the Plaintiff.

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

109. Ransom told Plaintiff that the Arbitrator had a brother who was an upper- level manager at Ford.

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

110. Reggie told Plaintiff that he first learned about the Arbitrator's relationship in June, 2017, before the Arbitration took place.

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

111. December, 2017 was the first time Ransom disclosed to Plaintiff that the Arbitrator had a conflict of interest with a management employee at Ford.

**ANSWER**: **Ford denies that the Arbitrator had a conflict of interest with a management employee at Ford. Ford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.**

112. Kolanowski told Plaintiff that VanDagens vaguely informed him that VanDagens' brother worked at Ford, but only after the Arbitration.

**ANSWER**: **Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.**

28

113.   The CBA allows

The impartial Umpire shall be a person jointly selected by the parties and shall continue to serve only so long as he/she continues to be acceptable to the parties.

CBA, at Art. VII, Sec. 21 (Vol. I, at p. 59).

**ANSWER**:   **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

114.   The CBA provides for the termination of an Umpire where:

(a) **Notice**. If at any time, either party desires to terminate the service of the Umpire, it shall give notice in writing to that effect, specifying the date of termination, and sending one copy to the Umpire and one copy to the other party.

(b) **Disposition of Pending Cases**. The party terminating the Umpire's services shall specify in its notice whether or not it is agreeable to have said Umpire render decisions in all cases pending before him/her up to the date of said termination, and if it determines that the Umpire may decide such pending cases, the Umpire shall render decisions thereon not later than thirty (30) days from the date of such notice.

If the party terminating the services of the Umpire elects not to have the cases pending before him/her decided by that Umpire, he/she shall render no further decisions subsequent to the time fixed in the notice, and all cases then pending before him/her shall be referred to his/her successor or to any other person the parties may agree on.

CBA, at Art. VII, Sec. 22 (Vol. I, at p. 59-60).

**ANSWER**:   **Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.**

### THE IUAW AND LOCAL UAW BREACHED THEIR DUTY OF FAIR <u>REPRESENTATION</u>

115.    The IUAW had a duty to fairly represent the Plaintiff at her  Arbitration.

**<u>ANSWER</u>:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

116.    The IUAW breached its duty of fair representation to the Plaintiff where  it:

        a.    Failed to inform Plaintiff of the Arbitrator's conflict-of-interest and partiality;

        b.    Failed to object to the Arbitrator;

        c.    Agreed to the Arbitrator without disclosing the  conflict-of-interest;

        d.    Failed to Notice the Arbitrator's termination.

**<u>ANSWER</u>:    Denied.**

117.    The Local UAW had a duty to fairly represent the Plaintiff at her Arbitration.

**<u>ANSWER</u>:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.**

118.    The Local UAW breached its duty of fair representation to the Plaintiff where it knew VanDagens' partiality and failed to:

        a.    inform Plaintiff of the Arbitrator's conflict-of-interest and partiality;

        b.    object to the Arbitrator;

        c.    Notice the Arbitrator's termination.

**ANSWER**:     **Denied.**

119.    As a result of one or more of the IUAW or Local UAW's breaches, the Arbitrator issued the Arbitration Award.

**ANSWER**:     **Denied.**

120.    The Arbitration Award found in favor of Ford and against Plaintiff.

**ANSWER**:     **Denied. The Arbitration Award, which speaks for itself, denied the grievance.**

121.    The Award was procured by corruption, fraud, or undue or where there was evident partiality or corruption in the Arbitrator.

**ANSWER**:     **Denied.**

122.    The IUAW or Local UAW's breach(es) caused Plaintiff to be denied a fair and impartial hearing.

**ANSWER**:     **Denied.**

123.    Alternatively, the IUAW or Local UAW's breach(es) caused Plaintiff to be denied an Award of backpay and reinstatement to her position.

**ANSWER**:     **Denied.**

124.    The IUAW or Local UAW's breach(es) have caused Plaintiff to suffer damages.

**ANSWER**:     **Denied.**

125.    Ford denies each and every allegation set forth above to which a response was not otherwise made or provided.

**PRAYER FOR RELIEF**

Ford denies that Plaintiff is entitled to any of the relief requested.

## FURTHER ANSWER AND DEFENSES

In addition to the denials and responses set forth above, Ford asserts the following defenses.  In pleading these defenses, Ford does not admit that it bears the burden of proof, production or persuasion on such defenses.  Further, Ford reserves the right to amend its Answer, to add or delete defenses, and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

**First Defense**:  Plaintiff lacks standing and the Second Amended Complaint fails in whole or in part to state a claim upon which relief can be granted and should be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 12(b)(1) and (6).

**Second Defense**:  The claims and contentions in Plaintiff's Second Amended Complaint are barred in whole in part by the doctrine of express or implied federal preemption in accordance with the provisions Section 301 of the Labor Management Relations Act (29 USC §185(a)), applicable case law and Article VI, Clause 2 of the Constitution of the United States.

**Third Defense**:  Plaintiff's Second Amended Complaint is barred insofar as it fails to allege sufficiently that the umpire in the arbitration forming the basis of this action denied any party a fundamentally fair hearing; does not allege sufficiently any evident bias or prejudice; and otherwise fails to allege any legally or materially cognizable ground for *vactaur* of the award.

**Fourth Defense**:  Plaintiff's Second Amended Complaint is barred in whole in party by principles of waiver and estoppel applicable through pertinent provisions of the relevant collective bargaining agreement and the operative terms and conditions of her membership in the UAW.

**Fifth Defense**:  Ford reserves the right to amend and/or supplement this answer and the affirmative defenses.

32

**WHEREFORE**, Ford demands that Plaintiff's Second Amended Complaint be dismissed with prejudice, that Plaintiff be denied any and all requested relief, that Plaintiff take nothing from Ford, that judgment be entered in favor of Ford and against Plaintiff, that the arbitration award of December 13, 2017 be confirmed and enforced and that Plaintiff be ordered to reimburse Ford its reasonable attorney's fees and cost of suit.

DATED:  April 3, 2018

Respectfully submitted,

s/Timothy S. Millman
Timothy S. Millman, N.D. Ill. No. 44398
Nicholas L DiVita, N.D. Ill. No. 37514
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  (816) 561-7007
Facsimile:   (816) 561-1888
Email:   tmillman@berkowitzoliver.com
              ndivita@berkowitzoliver.com

Karen Kies DeGrand
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:  (312) 422-0900
Facsimile:   (312) 422-0909

*Counsel for Defendant Ford Motor Company*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of April 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system that will send a notice of electronic filing to all counsel of record:

Keith L. Hunt
Bradley E. Faber
HUNT & ASSOCIATES, P.C.
55 W. Monroe St.-#3600
Chicago, Illinois 60603
Telephone:   (312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassocaw.com

*Counsel for Plaintiff*

Joshua File
Stanley Eisenstein
Katz, Friedman, Eagle, Eisenstein,
Johnson & Bareck
77 West Washington St., 20th Floor
Chicago, Illinois 60602
Telephone:   (312) 263-6330
Facsimile:   (312) 372-5555
jfile@kfeej.com
seisenstein@kfeej.com

*Counsel for UAW Defendants*

/s/ Timothy S. Millman
*Counsel for Defendant Ford Motor Company*

34