IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHRANDA CAMPBELL-SALAHUDDIN, | ) ) ) |
| Plaintiff, | ) No. 18 C 268 ) |
| v. | ) Hon. Virginia M. Kendall ) |
| FORD MOTOR COMPANY; UNITED AUTO WORKERS LOCAL 588; and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), AFL-CIO, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant Ford Motor Company's Motion to Dismiss Plaintiff Shranda Campbell-Salahuddin's Second Amended Complaint to Vacate Arbitration Award pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 20). For the reasons explained below, the Motion is granted and the Second Amended Complaint is dismissed without prejudice. Salahuddin is given until 7/30/18 to file a third amended complaint consistent with this opinion to the extent that she can do so.

**BACKGROUND**

Plaintiff Shranda Campbell-Salahuddin ("Salahuddin"), a former member of Defendant The United Automobile, Aerospace and Agricultural Implement Workers of America ("IUAW") and its local chapter, Defendant United Auto Workers Local 588 ("Local UAW") (collectively, "UAW Defendants"), worked for Defendant Ford Motor Company ("Ford") at its Stamping Plant in Chicago Heights, Illinois. (Dkt. 20) at ¶¶ 16–18. However, on August 29, 2016, Ford

1

terminated her employment for an alleged assault on another worker. *Id.* at ¶¶ 19, 35; *see also* (Dkt. 20-1) at 2. Salahuddin subsequently grieved her discharge pursuant to the UAW Defendants' and Ford's Collective Bargaining Agreement ("CBA") and an arbitration hearing was held about one year later on October 17, 2017. (Dkt. 20) at ¶¶ 20–25, 32, 38. There, the Local UAW served as the "nominal party" and was represented by Reggie Ransom. *Id*. at ¶¶ 42–43. Kathryn A. VanDagens—an attorney who is associated with the National Academy of Arbitrators and other national arbitration associations—served as the arbitrator. *Id*. at ¶¶ 26, 56, 58, 67, 81, 88. As relevant herein, VanDagens's brother is a member of Ford's Senior Management who has worked for Ford for more than 30 years. *Id*. at ¶¶ 53, 55. VanDagens never disclosed to Salahuddin this information. *Id*. at ¶¶ 87, 89, 91, 93. Salahuddin alleges that this created a conflict of interest for VanDagens in the face of which she failed to recuse herself. *Id*. at ¶¶ 93, 100.

In addition to Ransom, Local UAW representative Matt Kolanowski attended the October 17 arbitration hearing. *Id*. at ¶ 105. When it was over, Kolanowski drove VanDagens to her car, and at that time VanDagens told Kolanowski that her brother worked for Ford. *Id*. at ¶¶ 105–06. About two months later, on December 13, 2017, VanDagens issued an award denying Salahuddin's grievance and affirming that Ford had cause to discharge her. *See* (Dkt. 20-1). Sometime shortly after the issuance of the award, Ransom informed Salahuddin about VanDagens's brother and he disclosed to her that he had learned about the brother in June 2017. (Dkt. 20) at ¶¶ 108–110. Kolanowski also later told Salahuddin the same information. *Id*. at ¶ 112.

On January 12, 2018, Salahuddin brought this action against Ford and the UAW Defendants. Her Second Amended Complaint seeks to vacate the arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and for the Court to order a rehearing before an unbiased arbitrator, or alternatively, to reverse the arbitration award

and find in her favor. *Id.* at 21. Although her complaint does not contain delineated counts, she appears to bring the following claims: (1) Ford breached the CBA by terminating her without just cause; (2) VanDagens violated numerous ethical duties and infected the ultimate arbitration award, discussed below, with "evident partiality"; (3) Ford and the UAW Defendants breached the CBA by selecting a biased arbitrator instead of a neutral umpire; and (4) the UAW Defendants breached their duty of fair representation by (a) failing to disclose VanDagens's familial relationship to a Ford employee to Salahuddin until after the arbitration; (b) failing to object to VanDagens; (c) agreeing to VanDagens without disclosing the relationship; and (d) failing to notice VanDagens's termination pursuant to the CBA.

On April 3, 2018, Ford moved to dismiss Salahuddin's Second Amended Complaint, arguing that Salahuddin lacks standing to challenge the arbitration award and, alternatively, that Salahuddin has failed to set forth sufficient allegations to support her request for vacating the arbitration award. *See* (Dkt. 21). At a court status hearing on April 25, 2018, the UAW Defendants orally joined Ford's Motion. (Dkt. 35).

## **LEGAL STANDARD**

A motion to dismiss for lack of standing is a challenge to the court's subject matter jurisdiction under Rule 12(b)(1). *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Jimenez v. Illinois*, 2012 WL 174772, at *2 (N.D. Ill. Jan. 18, 2012). In considering a motion under Rule 12(b)(1), the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiff[ ]." *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). "[I]f a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) is the appropriate disposition." *AFGE, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999).

Similarly, in considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded allegations and views them in the light most favorable to the plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). However, the Court need not accept as true statements of law or unsupported conclusory factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). For both 12(b)(6) and 12(b)(1) motions, the Court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as "additional facts set forth in [plaintiff's] district court brief . . . so long as those facts are consistent with the pleadings." *See Matthews v. Hughes*, 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) (citing *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)) (internal alterations and quotation marks omitted).

## **DISCUSSION**

Section 301 of the LMRA provides for federal subject-matter jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization [such as a collective bargaining agreement] representing employees in an industry affecting commerce." 29 U.S.C. § 185(a); *see also Lippert Tile Co., Inc. v. Int'l Union of Bricklayers & Allied Craftsmen, District Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (noting that collective bargaining agreements are within the purview of Section 301).[1] However, a plaintiff represented by a union generally lacks standing to challenge an arbitration award because "when employees are represented by a union they are not parties to either the collective bargaining agreement or any union-company arbitration." *Cleveland v. Porca Co.*, 38 F.3d 289, 296–97 (7th Cir. 1994). "An

---

[1] As Ford correctly highlights ((Dkt. 22) at 6–7), "[i]n seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA." *Cleveland v. Porca Co.*, 38 F.3d 289, 296 n.5 (7th Cir. 1994); *see also Part-Time Faculty Ass'n at Columbia Coll. Chicago v. Columbia Coll. Chicago*, 892 F.3d 860, 864 n.3 (7th Cir. 2018).

exception to this general rule exists which 'allows employees to challenge or confirm a union-company arbitration award *but only if* the employees state a claim for a Section 301 fair representation case and the challenge or confirmation is integral to the case.'" *Id.* at 297; *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) ("When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a prerequisite claim of breach of their union's duty of fair representation."); *Shores v. Peabody Coal Co.*, 831 F.2d 1382, 1384 (7th Cir. 1987) (articulating the same rule). This type of claim—where an employee alleges an employer's breach of the CBA in conjunction with a breach of a union's fair duty of representation—is commonly referred to as a hybrid Section 301/fair representation claim under Section 301 of the LMRA. *See, e.g.*, *Yeftich*, 722 F.3d at 914; *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). The "two claims are inextricably interdependent. . . If one claim fails, 'neither claim is viable.'" *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016) (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997)).

Salahuddin attempts to assert such a hybrid claim. In addition to alleging various breaches of the CBA, she alleges that the UAW Defendants breached their duty of fair representation because they "(a) [f]ailed to inform [her] of the Arbitrator's conflict-of-interest and partiality; (b) [f]ailed to object to the Arbitrator; (c) [a]greed to the Arbitrator without disclosing the conflict-of-interest; [and] (d) [f]ailed to Notice the Arbitrator's termination." (Dkt. 20) at ¶ 116. But a breach of the fair duty of representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Yeftich*, 722 F.3d at 915 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)); *accord Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). Salahuddin's complaint makes no allegations of arbitrary, discriminatory,

5

or bad-faith conduct, nor does it allege facts from which an inference of such conduct could be reasonably inferred.[2]

Examining the first potential category of breach—arbitrariness—"[w]hether a union's actions are arbitrary calls for an objective inquiry." *Neal*, 349 F.3d at 369. A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *O'Neill*, 499 U.S. at 67 (citation and internal quotation marks omitted). The standard for arbitrariness is "extremely deferential" and the Court cannot "substitut[e] [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1177 (7th Cir. 1995) (citation omitted). While the level of deference is high, a union may not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Rogers v. Jewel Food Stores, Inc.*, 2014 WL 4913673, at *4 (N.D. Ill. Sept. 30, 2014) (quoting *Vaca*, 386 U.S. at 191). Furthermore, "[t]he plaintiff must also establish both that the union acted at least arbitrarily *and* that the plaintiff was actually harmed by the union's actions." *Garcia*, 58 F.3d at 1177–78 (internal citation omitted). As such, Salahuddin must state a claim from which a reasonable inference could be made "that the outcome of the arbitration would probably have been different but for the union's activities." *Id.* at 1177.

On this point, while Salahuddin has not included explicit allegations that the UAW Defendants engaged in arbitrary behavior in her Second Amended Complaint, she argues in Response that "the UAW Defendants' actions in failing to object or even inform [her] that an inherent conflict of interest existed was arbitrary conduct detrimental to [her] and constitutes a breach of their duty of fair representation." (Dkt. 34) at 4; *see also id.* at 10 ("the UAW

---

[2] Salahuddin need only allege one of these three elements to state a viable claim that the UAW Defendants breached their duty of fair representation.

6

Defendants' failiure [sic] to object to the arbitrator or failure to even inform Salahuddin of her conflict of interest and 'evident partiality' were arbitrary decisions which led to the partial arbitrator issuing an adverse award"). As an initial matter, "a plaintiff may not amend [her] complaint in [her] response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Further, to the extent that Salahuddin suggests that her allegations rise to the level of arbitrary behavior, she is mistaken. Although she alleges that the UAW Defendants' failed in numerous ways related to their acceptance of VanDagens as the arbitrator, she does not plausibly allege that "the union's behavior [was] so far outside a wide range of reasonableness, as to be irrational." *Cleveland*, 38 F.3d at 295 (quotations omitted). Salahuddin argues that any labor arbitrator whose brother is an employee of a grievant's employer is automatically unqualified as biased or partial, and, in turn, that any labor union that agrees to use such an arbitrator or fails to disclose the fact to the grievant has committed a *per se* breach of its duty of fair representation. But Salahuddin does not provide any binding precedent or analogous persuasive authority to support this sweeping legal conclusion.

In addition, the Second Amended Complaint also fails to allege that "the outcome of the arbitration would probably have been different but for the union's activities." *Garcia*, 58 F.3d at 1177. Instead, she simply concludes without explanation that having VanDagens as the arbitrator denied her a fair hearing and/or caused her to be denied a favorable award of backpay and reinstatement. (Dkt. 20) at ¶¶ 122–23; *see also* (Dkt. 34) at 10 (stating that she alleged that "the UAW Defendants' failure to object to the arbitrator or failure to even inform Plaintiff of her conflicts of interest and 'evident impartiality' were arbitrary decisions which led to the partial arbitrator issuing an adverse award"). But, without any supporting factual allegations, this is not a reasonable inference, particularly in light of the record of the arbitration hearing, which indicates

that VanDagens thoroughly analyzed Salahuddin's case and concluded that Ford had cause to terminate her employment. *See* (Dkt. 20-1) at 3–4; *see, e.g.*, *Garcia*, 58 F.3d at 1178 ("It is certainly possible that the arbitrator would have found [Plaintiff] a sympathetic witness and ruled differently, but it is equally possible that [Plaintiff's] testimony would have done [her] more harm than good."). In all, Salahuddin has failed to allege that the UAW Defendants acted arbitrarily.

As for the other two possible categories of breach, "[w]hether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369; *cf. Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685, 691 (7th Cir. 1982) ("To establish bad faith or discrimination, the union member must adduce 'substantial evidence of fraud, deceitful action or dishonest conduct.'") (citation and quotations omitted). The Second Amended Complaint does not allege discriminatory or bad faith conduct and the facts alleged in the Second Amended Complaint do not suggest improper motive as required to satisfy either element.

Although Salahuddin's Response does not clearly argue in favor of either element, it bears noting that the Response argues that "the union . . . *knowingly* withheld [VanDagens's familial relationship to a Ford employee] from Plaintiff." (Dkt. 34) at 2 (emphasis added); *see also id*. at 3. This statement is deficient for two reasons. First, as already noted, Salahuddin cannot amend her complaint by way of her Response, and seeing that her Second Amended Complaint only alleges the UAW Defendants' various failures to inform her about VanDagens, it does not at present allege that any information was "knowingly withheld." Although the Court is permitted to take notice of facts consistent with the pleadings set forth in Salahuddin's Response, *see Matthews*, 2015 WL 5876567, at *1, an allegation that the UAW Defendants knowingly withheld information carries different implications than those intimated by the Second Amended Complaint.

8

*Cf. Neal v. Newspaper Holdings, Inc.*, 349 F.3d at 369 ("[M]ere negligence . . . would not state a claim for breach of the duty of fair representation."). Second, even if the Second Amended Complaint had alleged the knowing withholding of information about VanDagens, without any subsidiary facts, such an allegation is improper and conclusory. *See Yeftich*, 722 F.3d at 916 ("Bare assertions of the state of mind required for the claim . . . must be supported with subsidiary facts."). Further, Salahuddin does not challenge the obvious alternative explanation that the UAW Defendants' took account of the Arbitrator's relationship and used their judgment in agreeing to or failing to object to the Arbitrator. *See Rupe*, 679 F.2d at 692 ("Establishing a breach of the duty of fair representation involves more than demonstrating mere errors of judgment.") (citation omitted); *see also McCauley*, 671 F.3d at 616 ("If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief.") (internal alterations, citations, and quotations omitted). Furthermore, the Court has limited discretion to challenge strategic choices made by the union in the course of their representation. *See, e.g., Garcia*, 58 F.3d at 1178 (noting that even if the plaintiff employee disagreed with the union attorney's decision not to let the plaintiff testify, it was not the court's place to question the union's strategic choices). Without more supporting facts, Salahuddin's allegations are conclusory and tenuous. Thus, the Court cannot credit this statement for the purposes of evaluating Ford's Motion.

In many ways, this case is similar to *Yeftich v. Navistar, Inc*. There, the union chose not to pursue the employees' grievances through to arbitration. In their complaint alleging a breach of the union's duty of fair representation, the plaintiffs generally asserted that the union knew that the employer had violated the CBA and acted in bad faith where it "intentionally mis[led] the [p]laintiffs as to the status of the grievances" and "invidiously diverted, stalled, and otherwise

9

terminated and abandoned the grievances." 722 F.3d at 916. Even with these allegations, the appellate court held that the complaint lacked the "factual specificity required to state a plausible breach-of-fair-representation claim." *Id.* For the reasons set forth above, Salahuddin's allegations here are similarly devoid of relevant factual support and therefore do not cross the line from possible to plausible. *See id.* at 917.

Overall, without more factual detail surrounding Salahuddin's allegations, the Court cannot conclude that she has plausibly alleged that the UAW Defendant's conduct was arbitrary, discriminatory, or in bad faith and by extension, the Second Amended Complaint fails to state a claim for violation of the unions' duty of fair representation. Instead, the allegations only suggest that Salahuddin was not satisfied with VanDagens and the ultimate disposition of her grievance, which is not sufficient. *See, e.g.*; *Lewis v. Dominick's Finer Foods, LLC*, 2013 WL 4401376, at *4–5 (N.D. Ill., Aug. 14, 2013) (granting the employer's motion to dismiss even where the plaintiff alleged that the union did not investigate the matter as thoroughly as it should have); *Evans v. U.S. Postal Serv.*, 428 F. Supp. 2d 802, 806 (N.D. Ill. 2006) (granting motion to dismiss hybrid claim where plaintiff failed to allege facts to prove the union breached its duty of fair representation), *aff'd*, 219 F. App'x 527 (7th Cir. 2007); *see also Garcia*, 58 F.3d at 1176 ("only an egregious disregard for union members' rights constitutes a breach of the union's duty") (citation and quotations omitted). Because she has failed to state the "indispensable predicate" claim for breach of the duty of fair representation, *Yeftich*, 722 F.3d at 914, her Second Amended Complaint seeking to vacate the arbitration award on account of breach of the CBA must be dismissed. Accordingly, the Court need not address the sufficiency of Salahuddin's remaining allegations at this time.

As a final point, the Court rejects Salahuddin's argument—based largely on out-of-circuit caselaw—that the Federal Arbitration Act's "evident partiality" standard provides an "additional

10

basis" for vacating the arbitration award here. (Dkt. 34) at 10–15. This same argument has been squarely rejected by the Seventh Circuit, and the Court will not revisit it here, particularly in light of its conclusion that Salahuddin has failed to plausibly allege a hybrid section 301/fair-representation claim. See *Lippert Tile Co.*, 724 F.3d at 948 ("Section 301 review simply does not include a free-floating procedural fairness standard absent a showing that some provision of the CBA was violated."); *Merryman Excavation, Inc. v. Int'l Union of Operating Engineers, Local 150*, 639 F.3d 286, 293 (7th Cir. 2011).

## CONCLUSION

For reasons stated above, Ford's Motion to Dismiss is granted and Salahuddin's Second Amendment Complaint is dismissed without prejudice. Salahuddin shall have until 7/30/18 to amend her complaint in a manner consistent with this opinion to the extent that she can do so.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: July16, 2018