**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHRANDA CAMPBELL-SALAHUDDIN,    )
    )
    )
          Plaintiff,    )
    )
        v.    )    No. 1:18-cv-00268
    )    Honorable Virginia M. Kendall
FORD MOTOR COMPANY;    )
UNITED AUTO WORKERS LOCAL 588;    )
and INTERNATIONAL UNION, UNITED    )
AUTOMOBILE, AEROSPACE AND    )
AGRICULTURAL IMPLEMENT WORKERS )
OF AMERICA (UAW), AFL-CIO,    )
    )

**DEFENDANT FORD MOTOR COMPANY'S ANSWER
TO PLAINTIFF'S THIRD AMENDED COMPLAINT
TO VACATE ARBITRATION AWARD**

For its Answer to Plaintiff's Third Amended Complaint to Vacate Arbitration Award

("Complaint") (Dkt. 40), defendant Ford Motor Company ("Ford" or "Defendant") respectfully

submits the following:

1.    This is a proceeding to set aside the Arbitration Award and to remand

pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. § 185)

("Section 301")[1] for rehearing and a fair and impartial Arbitration ruling free of corruption,

fraud or undue means and free of evident partiality or corruption in the arbitration process.

---

[1] Plaintiff's claim is pursuant to Section 301. There is a Circuit split as to whether the standards of fairness imposed by or derived from the Federal Arbitration Act (9 U.S.C. § 10(a)(1)-(2)) ("FAA")) should be applied to arbitrations at issue in Section 301 complaints and for purposes of preserving this issue on appeal, Plaintiff alleges that the standards imposed by the FAA should be considered when evaluating a Section 301 Complaint, and that Defendants' actions deprived Plaintiff of a fair and impartial arbitration.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations, including the allegations in FN1.

## THE PARTIES

2.    Plaintiff, Shranda Campbell-Salahuddin ("Salahuddin") is a resident and citizen of Schererville, Indiana.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

3.    Defendant Ford Motor Company ("Ford") operates the Ford Chicago Stamping Plant (the "Stamping Plant") in Cook County, Illinois and within this judicial district.

**ANSWER:**    Admitted.

4.    Defendant The United Automobile, Aerospace and Agricultural Implement Workers of America ("International UAW") is a labor union with a primary place of business located at 8000 East Jefferson, Detroit, Michigan.

**ANSWER:**    Admitted.

5.    Defendant United Auto Workers Local 588 (the "Local UAW") is a local branch of The United Automobile, Aerospace and Agricultural Implement Workers of America labor union with a primary place of business located at 21540 Cottage Grove Avenue, Chicago Heights, Illinois, and within this judicial district.

**ANSWER:**    Admitted.

## JURISDICTION AND VENUE

6.    Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 185 as this matter involves a federal question.

**ANSWER**:   These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

7.    Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Chicago, Illinois and/or Chicago Heights, Illinois and were all within the Northern District of Illinois and Defendants Ford and Local UAW reside in this judicial district and International UAW does business in this judicial district.

**ANSWER**:   These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

8.    The Ford Stamping Plant manufactures automobile parts and components.

**ANSWER:**   Admitted.

9.    The Ford Stamping Plant is located in Chicago Heights, Illinois, in the Northern District of Illinois, and regularly does business in Illinois.

**ANSWER:**   Admitted.

10.    Ford regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER:**   These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford admits that it does business within this judicial district.

11.    Defendant International UAW is a labor union representing hourly workers directly, and through its local chapter, the Local UAW.

**ANSWER:**   These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford admits the allegations.

12.     The International UAW and Local UAW both represent union members who work at Ford's Chicago Stamping Plant.

**ANSWER:**     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford admits the allegations.

13.     The International UAW and Local UAW represent Chicago Stamping Plant union members in union disputes in the Northern District of Illinois.

**ANSWER:**     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford admits only that the International UAW and Local UAW represent hourly workers, including those employed at Ford's Chicago Stamping Plant, and denies any remaining allegations.

14.     The International UAW regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

15.     The Local UAW regularly does business in the Northern District of Illinois and is therefore a "resident" of the Northern District of Illinois for purposes of venue.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford

lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

16.     Plaintiff Salahuddin was a member of Defendant International UAW.

**ANSWER**:     Admitted.

17.     Plaintiff Salahuddin was a member of the Local UAW.

**ANSWER**:     Admitted.

18.     As of August 29, 2016, Plaintiff had worked for Ford Motor Company for approximately sixteen (16) years.

**ANSWER**:     Admitted that Plaintiff had a Ford seniority date of November 21, 2001. Ford denies the remaining allegations.

19.     As of August 29, 2016, Plaintiff was working at Ford's Chicago Stamping Plant.

**ANSWER**:     Admitted that Plaintiff was employed by Ford at its Chicago Stamping Plant prior to her termination, which was effective August 29, 2016.  Ford denies the remaining allegations.

20.     On or about August 29, 2016, Ford terminated Plaintiffs employment.

**ANSWER:**     Admitted.

21.     Plaintiff grieved her discharge from Ford.

**ANSWER**:     Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

22.     Plaintiff's grievance was permitted pursuant to the International UAW and Ford's Collective Bargaining Agreement.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

23.    Plaintiff began the grievance process on August 29, 2016.

**ANSWER:**    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement on or about August 29, 2016, with respect to Plaintiff's termination, otherwise denied.

24.    Plaintiff initially grieved her discharge with the assistance of the Local UAW.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

25.    Plaintiff initially grieved her discharge through the Local UAW.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

26.    Plaintiff's grievance resulted in an arbitration hearing (the "Arbitration") on or about October 17, 2017.

**ANSWER:**    Admitted that the labor arbitration between Ford and the Union under the applicable collective bargaining agreement with respect to the Union's grievance of Plaintiff's termination took place on October 17, 2017, otherwise denied.

27.    Arbitrator Katheryn A. VanDagens ("VanDagens") conducted the Arbitration.

**ANSWER:**    Admitted that Katheryn A. VanDagens ("Arbitrator") served as the duly appointed umpire/arbitrator for the arbitration hearing on October 17, 2017, between Ford and the Union, otherwise denied.

28.    Arbitrator VanDagens practices law in Chicago Illinois.

**ANSWER:**    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

29.    Arbitrator VanDagens conducts arbitrations in Chicago Illinois.

**ANSWER**:    Admitted.

30.    Arbitrator VanDagens regularly does business in the Northern District of Illinois.

**ANSWER:**    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

31.    The arbitration in this matter took place in the Northern District of Illinois.

**ANSWER:**    Admitted that the arbitration hearing of October 17, 2017, between Ford and the Union took place in the geographical area comprised by the judicial district known as the Northern District of Illinois.

32.    Jurisdiction and venue are appropriate in the Northern District of Illinois.

**ANSWER:**    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

**COUNT I**
**VIOLATION OF SECTION 301 OF THE LABOR**
**MANAGEMENT RELATIONS ACT (29 U.S.C. § 185)**
(by Plaintiff against all Defendants)

33.    Plaintiff incorporates all allegations included as paragraphs 1-32 as and for this paragraph.

7

**ANSWER**:    Ford incorporates its responses to all allegations included as paragraphs 1-32 as and for its response to this paragraph.

A.    **FORD BREACHED ITS CONTRACTUAL OBLIGATIONS
UNDER THE COLLECTIVE BARGAINING AGREEMENT
BY TERMINATING PLAINTIFF WITHOUT CAUSE**

34.    In 2015, Ford and the International UAW executed a contract titled: Agreements Between the UAW and the Ford Motor Company (hereafter, "Collective Bargaining Agreement" or "CBA")

**ANSWER:**    Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

35.    Ford had a duty to honor its obligations under the CBA with respect to UAW members' workplace rights.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford admits that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

36.    As part of the CBA, Ford and the IUAW agreed that Ford only had unilateral authority to discipline and discharge employees if the discipline and discharge was "for cause":

The Company retains the sole right to discipline and discharge
employees for cause, provided that in the exercise of this right it will not
act wrongfully or unjustly or in violation of the terms of this
Agreement…Complaints that the Company has violated this paragraph
may be taken up through the Grievance Procedure provided in this
Agreement.

CBA, at Art. IV, Sec. 3 (Discipline and Discharge (Vol. I, p. 17)).

8

**ANSWER**:    Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

37.    When Ford terminated Plaintiff, it breached its obligations under CBA Art. VII, Sec. 3 by terminating Plaintiff without cause where:

> a.    Ford failed to prove accusations that Plaintiff "bumped" another person at Ford's Stamping Plant;
>
> b.    Evidence and testimony corroborated that Plaintiff was not at the alleged scene of the alleged "bumping" event;
>
> c.    Ford failed to prove accusations that any "bump" was "intentional";
>
> d.    The discipline issued to Plaintiff was not reasonable and consistent within Ford's Stamping Plant's standard discipline for similar charges;
>
> e.    Ford's investigation was biased against the Plaintiff;
>
> f.    Ford disregarded Miguel Astorga's and Herbert Simpson's interview statements which did not support for Ford's decision to terminate Plaintiff;
>
> g.    Ford did not interview identified witnesses Mike (the Company hourly team leader), Dede Perkins and Loretta to determine if Plaintiff complained about the uncleanliness of the women's bathrooms or whether cleaning personnel who complained about Plaintiff had a motive to fabricate allegations against her;
>
> h.    Grant Crowley, the reviewing Labor Relations representative who interviewed witnesses recommended that Plaintiff not be terminated based on the testimony he obtained;
>
> i.    Ford's records indicate that it summarily terminated Plaintiff or intended to do so on August 26, 2016 - even before Plaintiffs in-plant hearing;
>
> j.    Ford's records indicate its bias against her where it determined Plaintiff was terminated August 26, 2016- several days before her August 29, 2016 in-plant hearing at which she was informed of her termination.

*See,* UAW Post Hearing Brief ("Ex. A")

**ANSWER**:    Denied.

38.     By breaching the CBA and terminating Plaintiff without cause, Ford caused Plaintiff to suffer damages, including lost wages, the value of lost benefits, pain, suffering and emotional distress.

**ANSWER**:     Denied.

**A BIASED ARBITRATOR INSTEAD OF A DESIGNATED "UMPIRE" WAS SELECTED TO ARBITRATE PLAINTIFF'S FOURTH STAGE GRIEVANCE**

39.     Pursuant to the CBA, Ford and the IUAW also agreed:

When an employee . . . has a grievance against the Company, it shall be processed in accordance with the Grievance Procedure hereinafter provided.

* * *

CBA, at Art. VII, Sec. 1 (Vol. I, a p. 45).

**ANSWER**:     Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

40.     Plaintiff, through the Local UAW filed a grievance that her rights under Art. IV, Sec. 3 of the CBA were violated.

**ANSWER**:     Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, otherwise denied.

41.     When a grievance gets to the "Fourth Stage" of the grievance process, the CBA provides it may be appealed to an "Umpire":

If a satisfactory disposition is not made of a grievance by the Review Board and if the grievance is the type of case upon which the Umpire is empowered to rule, the case may be appealed by the National Ford Department of the International Union to the impartial Umpire hereinafter provided for, in accordance with the following provisions…

CBA, at Art. VII, Sec. 8 (Vol. I, at p. 53).

10

**<u>ANSWER</u>**:    Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

42.    When Plaintiff's grievance reached the end of the Third Stage in the grievance process, the International UAW and the Local UAW, on behalf of Plaintiff appealed the matter to the Umpire.

**<u>ANSWER</u>:**    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, including at the Fourth Stage, otherwise denied.

43.    The International UAW, through its representative Reggie Ransom prepared Plaintiff's Fourth Stage Grievance.

**<u>ANSWER</u>:**    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, including at the Fourth Stage, and that Reggie Ransom appeared on behalf of the Union at the arbitration hearing, otherwise denied.  Ford further lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations concerning who prepared the Fourth Stage Grievance and therefore denies the same.

44.    The Local UAW served as the nominal party with respect to Plaintiff's Fourth Stage grievance.

**<u>ANSWER</u>:**    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

45.    Plaintiff remained the real party-in-interest with respect to her Fourth Stage Grievance.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

46.    At a Fourth Stage Grievance, the CBA requires the parties use one of specifically designated persons as an "Umpire":

> The Umpire shall maintain an office where all notices and briefs required to be filed with him may be delivered.

CBA. at Art. VII. Sec. 12 (Vol. I. at p. 55).

> The parties shall establish a schedule of Umpire hearings which assures that all Units with pending cases are accorded equality of opportunity to have cases heard by the Umpire....

CBA, at Art. VII, Sec. 13(a) (Vol, I, at p. 56).

> The Umpire may make such investigation as he/she may deem proper.  The Umpire will hold hearings open to the parties and may examine the witnesses of each party and each party shall have the right to cross-examine all witnesses produced and to make a record of such proceedings.

CBA, at Art. VII, Sec. 13(b) (Vol. I. at p. 56).

> It shall be the obligation of the Umpire to the Company and the Union to rule on cases heard by him/her within thirty (30) days after the hearing. **Priority shall be given to deciding discharge cases.**  If, for good and proper reasons additional time is required, the Umpire may request an extension of the time limits set forth above by the parties and a reasonable extension thereof shall be granted.

CBA, at Art. VII, Sec. 14 (Vol. I. at p. 56) (emphasis added).

**ANSWER**:    Ford denies Plaintiff's alleged interpretation of the collective bargaining agreement, and admits only that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves.

47.     Ford and the Local UAW and International UAW did not present Plaintiff's Fourth Stage Grievance to the Umpire designated by the CBA.

**ANSWER**:     Denied.

48.     As of the date Plaintiff's Fourth State Grievance was presented, Ford failed to employ a permanent Umpire as contemplated by and in further violation of the CBA.

**ANSWER**:     Denied.

49.     As of the date Plaintiff's Fourth State Grievance was presented, Ford failed to employ a permanent Umpire who was to have "priority" over arbitrating discharge cases.

**ANSWER**:     Denied.

50.     A person other than the "Umpire" was selected to arbitrate Plaintiffs Fourth Stage Grievance.

**ANSWER**:     Denied.

51.     Arbitrator Van Dagens was selected to arbitrate Plaintiffs Fourth Stage Grievance.

**ANSWER**:     Admitted.

52.     Van Dagens served as the arbitrator (the "Arbitrator") in that matter.

**ANSWER**:     Admitted that the Arbitrator served as the umpire/arbitrator for the labor arbitration on October 17, 2017.

**B.      THE IUAW AND LOCAL UAW UNFAIRLY REPRESENTED PLAINTIFF**

53.     Prior to her termination, Plaintiff had repeatedly complained about harassment and discrimination against Ford Motor Company dating back to 2013.   These complaints included unwelcome and unwanted sexual advances, groping, inappropriate physical touching, and other types of discriminatory and harassing conduct.[2]

---

[2]    The Plaintiff is not making a "claim" of harassment or retaliation in this case but is simply including these factual allegations as background information to establish a motive of why the union discriminated against the

**ANSWER**:    Admitted that Plaintiff made various complaints during her employment, which speak for themselves, and to which Ford properly responded. Ford denies the remaining allegations, including any allegations of unlawful harassment or discrimination (including in FN2).

54.    Plaintiff repeatedly complained to the UAW, including to Local UAW Building Chairman, Matt Kolanowski ('Kolanowski") that Ford was discriminating and retaliating against her.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning repeatedly complaining to the UAW and therefore denies the same. Ford denies the remaining allegations.

55.    Plaintiff submitted numerous complaints about fellow union employees and management to both the union and Ford.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the submission of numerous complaints to the Union and therefore denies the same. Admitted that Plaintiff made various complaints to Ford during her employment, to which Ford properly responded. Ford denies the remaining allegations.

56.    Plaintiff's complaints included that:

   a.    UAW members sexually and racially harassed her;

   b.    The UAW failed to take steps to protect her;

   c.    The UAW failed to advocate on her behalf when Ford's Labor Relations Department questioned her about her allegations;

---

Plaintiff and made the conscious and arbitrary decision to afford her improper and inadequate representation. Plaintiff's claims of harassment, discrimination and retaliation against Ford Motor Company re contained in *Van et al. v. Ford Motor Company*, case no. 14 CV 8708 (N.D. Ill.).

d.    The union mishandled evidence, and failed to preserve and/or present Plaintiff's evidence supporting her allegations of sexual or racial harassment.

**ANSWER**:    Admitted that Plaintiff made various complaints during her employment, which speak for themselves, and to which Ford properly responded.  Ford denies the remaining allegations directed at Ford, including any allegations of sexual or racial harassment.  Ford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations directed at the UAW and therefore denies the same.

57.    As a result of Plaintiff's complaints, the UAW and its officials, including Chairman Kolanowski became tired of the Plaintiff's complaints and were frustrated by her continued complaints about fellow UAW members.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

58.    After Plaintiff joined in the Federal Lawsuit, UAW officials, including Reggie Ransom and Matt Kolanowski told her that her lawsuit was going to "get the plant shut down."

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

59.    When Plaintiff continued to complain about other union employees, the UAW acted arbitrarily and refused to adequately represent Plaintiff in a subsequent matter.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

60.    In 2016, Plaintiff complained that the female restroom was unkempt and unsanitary.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

61.    Plaintiff was not aware of who the personnel were that were responsible for cleaning the restroom, but later learned that a Ms. Kasha Lee "got in trouble" because of Plaintiff's complaint.

**ANSWER**:    Denied.

62.    Plaintiff did not know Ms. Lee and had not knowingly interacted with Ms. Lee at work.

**ANSWER**:    Denied.

63.    Ms. Lee is also a union employee.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

64.    Ms. Lee wrote a false statement against Plaintiff alleging Plaintiff confronted and "bumped" her at work.

**ANSWER**:    Denied.

65.    Ms. Lee falsely alleged that this occurred at or around 2:15 p.m. on June 22, 2016.

**ANSWER**:    Denied.

66.    Plaintiff did not interact with Ms. Lee on June 22, 2016.

**ANSWER**:    Denied.

67.    On June 22, 2016, from at least 2:00 p.m., and continuing throughout that shift, Plaintiff was at her work station in plain view of co-worker Kimberley Sykes.

**ANSWER**:    Denied.

68.    Supervisor Tom Nichols was aware Plaintiff was working on that shift at the 2:00 p.m. start of the shift.

**ANSWER**:    Denied.

69.    Nichols supervised her on the line until he was replaced later that afternoon by Supervisor Kevin Daniels.

**ANSWER**:    Denied.

70.    Labor Relations Representative Grant Crowley investigated Ms. Lee's complaint.

**ANSWER**:    Admitted.

71.    Crowley refused to take a statement from either Kimberly Sykes or Tom Nichols in connection with Ford's investigation of Ms. Lee's complaint.

**ANSWER**:    Denied.

72.    Crowley recommended that Plaintiff should not be terminated.

**ANSWER**:    Denied.

73.    Crowley's superiors overrode his recommendation and instructed that Plaintiff be terminated because of their discriminatory animus toward Plaintiff.

**ANSWER**:    Denied.

74.    When Ford terminated Plaintiff, purportedly based on Ms. Lee's complaint, the UAW consciously decided not to negotiate Plaintiff's reinstatement.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether the UAW made a conscious decision and therefore denies the same.  Ford denies the remaining allegations.

75.     UAW Chairman Matt Kolanowski told Plaintiff that he negotiated the reinstatement of Dina Parker and Vernessa Burkes who had been terminated for physical altercations at work.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

76.     Kolanowski told Plaintiff he could have negotiated Plaintiff's reinstatement.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

77.     Kolanowski told Plaintiff if he negotiated her reinstatement, that saving her would have meant that someone else would have been fired.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

78.     The UAW acted in a conflict of interest to choose other employee(s) over Plaintiff instead of negotiating that Plaintiff be reinstated.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

79.     The Local UAW's conscious decision not to negotiate Plaintiff's reinstatement because she complained about workplace problems was arbitrary.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

80.    The Local UAW's conscious decision not to negotiate Plaintiff's reinstatement because she complained about workplace problems more than other employees was irrational.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

81.    The Local UAW's conscious decision not to negotiate Plaintiff's reinstatement was an intentional and discriminatory action taken against Plaintiff in bad faith because Plaintiff complained too much about observed workplace problems.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

82.    The UAW acted arbitrarily toward Plaintiff.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

83.    The UAW's conduct toward the Plaintiff was irrational.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

84.    Plaintiff continued through the CBA process and proceeded to arbitration.

**ANSWER**:    Admitted that the Union initiated and pursued grievance procedures under the applicable collective bargaining agreement with respect to Plaintiff's termination, including at the Fourth Stage, otherwise denied.

19

85.     Beginning at least by June, 2017, and continuing through November, 2017, Plaintiff met with Ransom in person and telephonically and discussed her Fourth Stage Grievance and upcoming arbitration with him on numerous occasions.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

86.     From at least June, 2017 to November, 2017, Plaintiff repeatedly asked Ransom for information about the arbitrator.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

87.     On or about June 13, 2017, Ransom learned that the Arbitrator had a brother who worked in upper management at Ford.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

88.     Ransom also knew that Plaintiff was scheduled to be deposed on June 27, 2017 in *Van et al v. Ford Motor Company,* 14 CV 8708.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

89.     Ransom kept the fact that the Arbitrator had a brother who worked in upper management at Ford from Plaintiff so that it would not serve as another basis on which she could testify against Ford in her deposition in that matter.

**ANSWER**:     Ford denies the allegations that the sibling relationship would serve as another basis on which Plaintiff could testify against Ford in that matter.  Ford lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

90.     From at June, 2017 and continuing until December, 2017, Ransom repeatedly falsely told Plaintiff that he did not know anything about the Arbitrator.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

91.     From at least June, 2017 to November, 2017, Ransom told Plaintiff that the Arbitrator was "new."

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

92.     From at least June, 2017 to at least November, 2017, Ransom told Plaintiff that Plaintiff's arbitration was VanDagens' first Ford/UAW arbitration.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

93.     From at least June, 2017 to at least November, 2017, Ransom told Plaintiff 'nobody knows anything about her" [the Arbitrator].

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

94.     Local UAW Representative Matt Kolanowski ("Kolanowski") attended Plaintiff's Arbitration.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

95.     At the conclusion of the Arbitration hearing, Kolanowski gave Arbitrator VanDagens a ride to her vehicle.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

96.     During the course of the drive, VanDagens informed Kolanowski that her brother worked at Ford.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

97.     Following Plaintiff's Arbitration in October, 2017, and continuing through at least November, 2017, Plaintiff repeatedly asked Kolanowski what he knew about the Arbitrator.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

98.     From October, 2017, and continuing through at least November, 2017, Kolanowski repeatedly told Plaintiff that he did not know anything about the Arbitrator.

**ANSWER**:     Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

99.     The Arbitrator issued the Arbitration Award on December 13, 2017.

**ANSWER**:     Admitted.

100.     After the Arbitrator issued the Award, Kolanowski told Plaintiff that:

a.     VanDagens informed him that VanDagens' brother worked at Ford:

b.     he had actually been aware VanDagens' brother was a Ford employee for more than a month prior to the Award being issued;

c.     he had talked with Reggie Ransom about VanDagens' brother being a Ford employee and:

      1.    Reggie discouraged Kolanowski from sharing this information with Plaintiff;

      2.    Reggie told Kolanowski he would deny knowing about the Arbitrator's conflict-of-interest.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

101.    In December, 2017, after the Arbitrator issued her award, Ransom told Plaintiff that:

      a.    the Arbitrator had a conflict of interest with an upper-management employee at Ford;

      b.    the Arbitrator had a brother who was an upper-level manager at Ford;

      c.    he had not objected to the conflict of interest;

      d.    the arbitration was final;

      e.    he would not assist Plaintiff in appealing the matter any further because if he did, he would lose his job.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

102.    The CBA allows

The impartial Umpire shall be a person jointly selected by the parties and shall continue to serve only so long as he/she continues to be acceptable to the parties.

CBA, at Art. VII, Sec. 21 (Vol. I, at p. 59).

**ANSWER**:    Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

103.    The CBA provides for the termination of an Umpire where:

**(a) Notice.** If at any time, either party desires to terminate the service of the Umpire, it shall give notice in writing to that effect, specifying the date of termination, and sending one copy to the Umpire and one copy to the other party.

23

**(b) Disposition of Pending Cases.** The party terminating the Umpire's services shall specify in its notice whether or not it is agreeable to have said Umpire render decisions in all cases pending before him/her up to the date of said termination, and if it determines that the Umpire may decide such pending cases, the Umpire shall render decisions thereon not later than thirty (30) days from the date of such notice.

If the party terminating the services of the Umpire elects not to have the cases pending before him/her decided by that Umpire, he/she shall render no further decisions subsequent to the time fixed in the notice, and all cases then pending before him/her shall be referred to his/her successor or to any other person the parties may agree on.

CBA, at Art. VII, Sec. 22 (Vol. I, at p. 59-60).

**ANSWER**: Admitted that Ford and the Union are parties to a collective bargaining agreement effective in and after 2015, the terms of which speak for themselves, otherwise denied.

104. The IUAW and Local UAW intentionally concealed and knowingly withheld the Arbitrator's conflict of interest from Plaintiff until after the Arbitration Award was issued.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford denies the allegations.

105. The IUAW and Local UAW intentionally concealed and knowingly withheld the Arbitrator's conflict of interest from Plaintiff until after it was "too late" to object to the Arbitrator pursuant to Sections 21 and 22 of the CBA.

**ANSWER**: These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford. To the extent a further response is required, Ford denies the allegations.

106. The IUAW and Local UAW intentionally concealed and knowingly withheld the Arbitrator's conflict of interest from Plaintiff until the arbitration was "final."

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

107.    The IUAW had a duty to fairly represent the Plaintiff at her Arbitration.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

108.    The IUAW breached its duty of fair representation to the Plaintiff where it:

    a.     Informed Plaintiff that it was not aware of the Arbitrator' s conflict-of-interest and partiality;

    b.     Failed to inform Plaintiff of the Arbitrator's conflict-of-interest and partiality;

    c.     Failed to object to the Arbitrator;

    d.     Agreed to the Arbitrator without disclosing the conflict-of-interest;

    e.     Failed to Notice the Arbitrator's termination.

**ANSWER**:     Denied.

109.    The Local UAW had a duty to fairly represent the Plaintiff at her Arbitration.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

110.    The Local UAW breached its duty of fair representation to the Plaintiff where it knew VanDagens' partiality and failed to:

    a.     inform Plaintiff of the Arbitrator's conflict-of-interest and partiality;

    b.     object to the Arbitrator:

    c.     Notice the Arbitrator's termination.

**ANSWER**:     Denied.

111.    Ransom and Kolanowski intentionally concealed the Arbitrator's conflict of interest and bias against the Plaintiff, despite her repeated requests for information about the Arbitrator.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

112.    Failing to inform Plaintiff about known information regarding the Arbitrator until it was too late to object to or terminate the Arbitrator was arbitrary.

**ANSWER**:    Denied.

113.    Failing to inform Plaintiff about known information regarding the Arbitrator until it was too late to object to or terminate the Arbitrator was so far outside a wide range of reasonableness, that it was irrational.

**ANSWER**:    Denied.

114.    Alternatively, the IUAW and Local UAW intentionally concealed known information about the Arbitrator from the Plaintiff based on their discriminatory and bad faith intent and that the Plaintiff would be terminated.

**ANSWER**:    Denied.

115.    As a result of one or more of the IUAW or Local UAW's breaches, the Arbitrator issued the Arbitration Award.

**ANSWER**:    Denied.

116.    The Arbitration Award found in favor of Ford and against Plaintiff.

**ANSWER**:    Admitted that the Arbitration Award, which speaks for itself, denied the grievance, otherwise denied.

26

117.    The Award was procured by corruption, fraud, or undue or where there was evident partiality or corruption in the Arbitrator.

**ANSWER**:    Denied.

118.    The IUAW or Local UAW's breach(es) caused Plaintiff to be denied a fair and impartial hearing.

**ANSWER**:    Denied.

119.    Alternatively, the IUAW or Local UAW's breach(es) caused Plaintiff to be denied an Award of backpay and reinstatement to her position.

**ANSWER**:    Denied.

120.    The IUAW or Local UAW's breach(es) have caused Plaintiff to suffer damages.

**ANSWER**:    Denied.

121.    The outcome of the arbitration would probably have been different but for the UAW's activities.

**ANSWER**:    Denied.

122.    Ford and the UAW agreed to VanDagens specifically for Plaintiff's Arbitration.

**ANSWER**:    Admitted that Ford and the UAW agreed on the Arbitrator for the arbitration hearing on October 17, 2017, otherwise denied.

123.    The UAW agreed to VanDagens arbitrating Plaintiff's grievance, knowing she had never previously arbitrated a case with Ford.

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

124.    The UAW agreed to VanDagens arbitrating Plaintiff's grievance, knowing her brother is Doug VanDagens.

**ANSWER**:    Admitted that the Arbitrator disclosed that her brother is Doug VanDagens, after which she served as the umpire/arbitrator for the arbitration hearing on October 17, 2017.  Ford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

125.    Doug VanDagens is a member of Ford's Senior Management.

**ANSWER**:    Admitted that Doug VanDagens was Global Director, Connected Services, at Ford during 2017, otherwise denied.

126.    Doug VanDagens is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B).

**ANSWER**:    Admitted that Doug VanDagens was Global Director, Connected Services, at Ford during 2017, otherwise denied.

127.    Doug VanDagens has worked at Ford for 31 years.

**ANSWER**:    Admitted that Doug VanDagens had worked at Ford for 31 years as of the date of the arbitration hearing, otherwise denied.

128.    As an attorney, Arbitrator VanDagens owed a duty to disclose conflicts of interest.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

129.    As an attorney, Arbitrator VanDagens owed a duty to avoid the appearance of impropriety.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

130.    Arbitrator VanDagens is a member of the National Academy of Arbitrators. (Ex. C).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

131.    Arbitrator VanDagens serves on the National Academy of Arbitrators' Board of Governors. (Ex. C).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

132.    The National Academy of Arbitrators has a Code of Professional Responsibility for Arbitrators of Labor Management Disputes. (Ex. D).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

133.    The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes requires that an arbitrator disclose conflicts of interest.  (Ex. D. at pp. 8-9).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

134.    The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes considers disclosures "required." (Ex. D, at p. 8).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

135. The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes places the burden of disclosure on the arbitrator. (Ex. D, at p. 9).

> **ANSWER**:  These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

136. Under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, prior to acceptance of an appointment, an arbitrator must disclose to the parties involved any close personal relationship or other circumstance, which might reasonably raise a question as to the arbitrator's impartiality. (Ex. D. at p. 9).

> **ANSWER**:  These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

137. Under The National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, if the arbitrator believes or perceives that there is a clear conflict of interest, the arbitrator should withdraw, irrespective of the expressed desires of the parties.

> **ANSWER**:  These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

138. Under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

> a.  That her brother is Doug VanDagens;
>
> b.  That her brother is a member of Ford's Senior Management;

      c.    That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

      d.    That her brother has worked at Ford for 31 years.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

139.    Arbitrator VanDagens serves on the American Arbitration Association's ("AAA") National Roster of (Employment) Neutrals. (Ex. C).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

140.    Arbitrator VanDagens serves on the labor arbitrator panels of the AAA. (Ex. C).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

141.    The AAA has an official "Statement of Ethical Principles." (Ex. E).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

142.    Arbitrators serving on the AAA's National Roster of (Employment) Neutrals have a duty to abide by the AAA Statement of Ethical Principles.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

143.    Arbitrators serving on the labor arbitrator panels of the AAA have a duty to abide by the AAA Statement of Ethical Principles.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

144.     Under the AAA Statement of Ethical Principles, when an arbitrator or mediator is selected from a list of potential neutrals. (s)he is required to disclose the existence of interests or relationships that are likely to affect impartiality or that might reasonably create an appearance that (s)he is biased against one party or favorable to another. (Ex. E).

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

145.     Under the AAA Statement of Ethical Principles, there is judicial oversight for arbitrator impartiality, as arbitrator bias is one of the grounds for vacating an award.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

146.     Under the AAA Statement of Ethical Principles, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

        a.     That her brother is Doug VanDagens;

        b.     That her brother is a member of Ford's Senior Management;

        c.     That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

        d.     That her brother has worked at Ford for 31 years.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

147.     Under the AAA Statement of Ethical Principles, there should be judicial oversight for VanDagens' breach of her duties to the Plaintiff, as arbitrator bias is one of the grounds for vacating an award.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

148.    The AAA also has a Code of Ethics for Arbitrators in Commercial Disputes. (Ex. F).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

149.    Canon II of the AAA Code of Ethics for Arbitrators in Commercial Disputes requires that an "disclose any interest or relationship likely to affect impartiality or which might create an appearance of partiality." (Ex. F. at Cannon II).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

150.    Arbitrator VanDagens had a duty to follow the AAA Code of Ethics for Arbitrators in Commercial Disputes.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

151.    Under the AAA Code of Ethics for Arbitrators in Commercial Disputes, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

   a.    That her brother is Doug VanDagens;

   b.    That her brother is a member of Ford's Senior Management;

   c.    That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

   d.    That her brother has worked at Ford for 31 years.

33

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

152.    Arbitrator VanDagens serves on the labor arbitrator panels of the Federal Mediation and Conciliation Service ("FMCS"). (Ex. C).

**ANSWER**:    Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

153.    The FMCS has a Code of Professional Responsibility for Arbitrators of Labor-Management Disputes of the National Academy of Arbitrators, FMCS and AAA ("FMCS Code of Professional Responsibility").  (Ex. G).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

154.    The FMCS Code of Professional Responsibility provides that "[e]ssential personal qualifications of an arbitrator include honesty, integrity, impartiality and general competence in labor relations matters."  (Ex. G, at p. 5).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

155.    The FMCS Code of Professional Responsibility provides that "[a]n arbitrator shall not engage in conduct that would compromise or appear to compromise the arbitrator's impartiality."  (Ex. G, at p. 6).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

156.    The FMCS Code of Professional Responsibility provides that "[b]efore accepting an appointment, an arbitrator must disclose directly or through the administrative agency involved, any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest." (Ex. G, at p. 7).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

157.    The FMCS Code of Professional Responsibility provides that "[a]n arbitrator must not permit personal relationships to affect decision-making.  Prior to acceptance of an appointment, an arbitrator must disclose to the parties or to the administrative agency involved any close personal relationship or other circumstance, in addition to those specifically mentioned earlier in this section, which might reasonably raise a question as to the arbitrators impartiality." (Ex. G, at p. 8).

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

158.    Under the FMCS Code of Professional Responsibility, Arbitrator VanDagens had a duty to disclose to Plaintiff one or more of the following:

    a.    That her brother is Doug VanDagens;

    b.    That her brother is a member of Fords Senior Management;

    c.    That her brother is Global Director, Connected Services Solutions at Ford Motor Company. (Ex. B);

    d.    That her brother has worked at Ford for 31 years.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies the allegations.

159.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother is Doug VanDagens.

**ANSWER**:    Denied that the Arbitrator "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.  Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

160.    By failing to disclose to Salahuddin that her brother is Doug VanDagens, Arbitrator VanDagens breached duties she owed Salahuddin:

   a.    as an attorney:

   b.    under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

   c.    under the AAA Statement of Ethical Principles;

   d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes:

   e.    under the FMCS Code of Professional Responsibility.

**ANSWER**:    Denied.

161.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother is a member of Ford's Senior Management.

**ANSWER**:    Denied that the Arbitrator "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.  Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

162.    By failing to disclose to Salahuddin that her brother is a member of Ford's Senior Management, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.    as an attorney:

      b.    under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes

      c.    under the AAA Statement of Ethical Principles;

      d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes

      e.    under the FMCS Code of Professional Responsibility.

**ANSWER**:    Denied.

163.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother is Global Director, Connected Services Solutions at Ford Motor Company.

**ANSWER**:    Denied that the Arbitrator "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.  Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

164.    By failing to disclose to Salahuddin that her brother is Global Director, Connected Services Solutions at Ford Motor Company, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.    as an attorney;

      b.    under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.    under the AAA Statement of Ethical Principles;

      d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes:

      e.    under the FMCS Code of Professional Responsibility.

**ANSWER**:    Denied.

165.    Arbitrator VanDagens failed to disclose to Salahuddin that her brother has worked at Ford for 31 years.

**<u>ANSWER</u>**:    Denied that the Arbitrator "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so.   Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

166.    By failing to disclose to Salahuddin that her brother that her brother has worked at Ford for 31 years, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.    as an attorney:

      b.    under the National Academy of Arbitrators' Code of

Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.    under the AAA Statement of Ethical Principles;

      d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes:

      e.    under the FMCS Code of Professional Responsibility.

**<u>ANSWER</u>**:    Denied.

167.    Arbitrator VanDagens failed to disclose to Salahuddin she had a conflict of interest.

**<u>ANSWER</u>**:    Denied that the Arbitrator "failed" to make such disclosure to Plaintiff, insofar as it incorrectly assumes a duty to have done so and that a conflict of interest existed.   Otherwise, Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

168.     By failing to disclose to Salahuddin that she had a conflict of interest in serving as an Arbitrator in Plaintiff's Arbitration, Arbitrator VanDagens breached duties she owed Salahuddin:

>    a.    as an attorney;
>
>    b.    under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes:
>
>    c.    under the AAA Statement of Ethical Principles;
>
>    d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes;
>
>    e.    under the FMCS Code of Professional Responsibility.

**ANSWER**:     Denied.

169.     On January 5, 2018, Judge Sharon Johnson Coleman recused herself from the *Van* case, 14-CV-8708, N.D. Ill. (Doc. # 215), on the grounds that a family member recently became employed at Ford.

**ANSWER**:     The record and docket in Case No. 14-CV-8708 pending in the United States District Court for the Northern District of Illinois speak for themselves, otherwise denied.

170.     Arbitrator VanDagens had a duty to avoid an appearance of impropriety.

**ANSWER**:     These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.

171.     Arbitrator VanDagens did not recuse herself even though her family member was employed at Ford.

**ANSWER**:     Admitted that the Arbitrator did not recuse herself and that brother was employed at Ford, but denied insofar as it incorrectly assumes a duty to have done so.

172.    By failing to recuse herself, VanDagens breached her duty to avoid the appearance of impropriety.

**ANSWER**:    Denied.

173.    By failing to avoid an appearance of impropriety, Arbitrator VanDagens breached duties she owed Salahuddin:

      a.    as an attorney;

      b.    under the National Academy of Arbitrators' Code of Professional Responsibility for Arbitrators of Labor Management Disputes;

      c.    under the AAA Statement of Ethical Principles;

      d.    under the AAA Code of Ethics for Arbitrators in Commercial Disputes;

      e.    under the FMCS Code of Professional Responsibility.

**ANSWER**:    Denied.

174.    The UAW agreed to VanDagens despite that VanDagens failed to abide by her ethical duties to:

      a.    Disclose to Plaintiff that she had a conflict of interest;

      b.    Disclose to Plaintiff that her brother was a senior management at Ford;

      c.    Disclose to Plaintiff that her brother worked Ford for 31 years;

      d.    Recuse herself from this arbitration;

      e.    Avoid the appearance of impropriety.

**ANSWER**:    Denied.

175.    The International UAW and Local UAW's actions agreeing to VanDagens and failing to object to her or terminate her in light of her ethical improprieties was arbitrary toward the Plaintiff.

**ANSWER**:    Denied.

176.    Alternatively, the International UAW and Local UAW's actions agreeing to VanDagens and failing to object to her or terminate her in light of her ethical improprieties was discriminatory and in bad faith.

**ANSWER**:    Denied.

177.    VanDagens' findings, as contained in her Award demonstrate her bias against the Plaintiff.

**ANSWER**:    Denied.

178.    The International UAW and Local UAW's activities permitting VanDagens to issue the Award caused the biased Award to issue.

**ANSWER**:    Denied.

179.    But-for the International UAW and Local UAW's actions, an unbiased arbitrator would have issued an award with an outcome more favorable to the Plaintiff.

**ANSWER**:    Denied.

180.    The Arbitrator purportedly based her Award on Ms. Lee's credibility:

> Lee's testimony was direct and plausible. Each time she told her story, she repeated essentially the same account. The minor differences between Lee's sworn testimony and her interview statement do not undercut her credibility.

(Ex. A, at p. 3).

**ANSWER**:    Admitted that the Arbitrator issued an Arbitration Award, which speaks for itself.  Ford denies the remaining allegations.

181.    VanDagens' this finding was directly contradictory to Ms. Lee's statements at the Arbitration which provided:

> a.    Plaintiff was terminated based on a written report and investigation into allegations by Ms. Lee, but that at the Arbitration, Ms. Lee said what she wrote on the paper was "wrong."

       b.    At the Arbitration hearing, Ms. Lee could not remember where her supposed witness was located during the alleged confrontation, saying "I don't know. I don't know where she (Ms. William) was."

**ANSWER**:   Admitted that Kasha Lee testified at the arbitration hearing. Ford avers that Lee's testimony speaks for itself. Ford denies the remaining allegations.

182.    The supposed witness, Ms. Trechon Williams originally provided a statement to Ford corroborating Ms. Lee's account.

**ANSWER**:   Admitted that Trechon Williams provided a witness statement, which speaks for itself, otherwise denied.

183.    Ms. Williams refused to testify for Ford at the Arbitration.

**ANSWER**:   Admitted that Williams did not testify at the arbitration hearing. Ford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

184.    The International UAW and/or the Local UAW knew Ms. Williams refused to testify at the Arbitration because she did not want to provide false testimony under oath.

**ANSWER**:   Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

185.    Prior to the Arbitration, Ms. Williams told UAW Representative "Dede" that she refused to testify and corroborate Ms. Lee's allegations at the Arbitration hearing because Ms. Lee's allegations were untrue.

**ANSWER**:   Ford lacks knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same.

186.    Despite that the International UAW and/or Local UAW knew that Ms. Lee's key witness recanted her story, the UAW refused to require that Ms. Williams testify.

**ANSWER**: Admitted that Williams did not testify at the arbitration hearing. Ford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

187. Despite Ms. Williams' absence, and the fact that it was hearsay, the Arbitrator considered Ms. Williams' original false statement as evidence corroborating Ms. Lee's changing stories.

**ANSWER**: Ford avers that the Arbitration Award speaks for itself, otherwise denied.

188. The International UAW and Local UAW did not present witnesses to testify and corroborate that Plaintiff was working on the line during the time Ms. Lee claims she was confronted.

**ANSWER**: Admitted that witnesses did not corroborate Plaintiff's version of events. Denied insofar as Plaintiff suggests that she was working on the line during the time Ms. Lee claims she was confronted.

189. Ford presented a witness, Supervisor Kevin Daniels, who arrived to work at or around 3:00 p.m. on the day of the alleged altercation.

**ANSWER**: Admitted that Kevin Danielson supervised Plaintiff and testified at the arbitration hearing. Ford avers that Danielson's testimony speaks for itself. Ford denies the remaining allegations.

190. The Arbitrator permitted Daniels to testify even though he was not listed in Ford's witness disclosure.

**ANSWER**: Admitted that Kevin Danielson testified at the arbitration hearing. Ford avers that the arbitration record speaks for itself. Ford denies the remaining allegations.

191.    The Arbitrator permitted Daniels to testify regarding the time Plaintiff arrived at work, even though the time Plaintiff arrived at work was outside of Daniel's knowledge.

**ANSWER**:    Admitted that Kevin Danielson testified at the arbitration hearing.  Ford avers that Danielson's testimony speaks for itself.  Ford denies the remaining allegations.

192.    The Arbitrator permitted Ford to take a significant recess when Daniels arrived to testify so that Ford's representative could prepare him for testifying.

**ANSWER**:    Denied.

193.    Daniels testified about time sheets, but the time sheets he testified about were incomplete, cut-off and did not contain Plaintiff's start-time.

**ANSWER**:    Admitted that Kevin Danielson testified at the arbitration hearing.  Ford avers that Danielson's testimony speaks for itself.  Ford denies the remaining allegations.

194.    Daniels did not arrive to work until after the Plaintiff on the date in question.

**ANSWER:**    Admitted that Kevin Danielson testified at the arbitration hearing.  Ford avers that Danielson's testimony speaks for itself.  Ford denies the remaining allegations.

195.    The International UAW and Local UAW failed to object to Daniels despite that he:

      a.    Did not have knowledge of the time Plaintiff arrived at work or of her activities during the 2:00 p.m. hour on the day in question;

      b.    Was not included on Ford's witness list;

      c.    Testified about time sheets that were incomplete, cut off and which did not contain Plaintiff's start time.

**ANSWER**:    Ford avers that the arbitration record and Kevin Danielson's testimony speak for themselves.  Ford denies the remaining allegations.

196.    Daniels testified that Plaintiff arrived at work at 3:00 p.m. on that date.

44

**ANSWER**:    Admitted that Kevin Danielson testified at the arbitration hearing.  Ford

avers that Danielson's testimony speaks for itself.  Ford denies the remaining allegations.

197.    The Arbitrator relied on Daniels' testimony to suggest that Plaintiff was not

credible when Plaintiff testified she was working on her line at 2:00 p.m.

**ANSWER**:    Ford avers that the Arbitration Award speaks for itself.  Ford denies the

remaining allegations, including any suggestion that Danielson's testimony was the only

evidence that the Arbitrator relied on.

198.    The Arbitrator's reasoning was evidently biased and perverted, as even if Daniels'

testimony was credible, that would mean Plaintiff was not in the building until 3:00 p.m. – 45

minutes after Ms. Lee claimed to have been confronted.

**ANSWER**:    Denied.

199.    The Arbitrator's credibility determination overwhelmingly in favor of Lee,

despite clear contradictions between her under oath statement and prior statements and relying

on Williams' hearsay statement demonstrated the Arbitrator's bias.

**ANSWER**:    Denied.

200.    But-for the International UAW and Local UAW permitting Van Dagens to

arbitrate this matter, and knowing failure to call Ms. Williams as a witness, any reasonable, non-

biased arbitrator would have probably reached a different conclusion regarding whether or not

Plaintiff should have been terminated.

**ANSWER**:    Denied.

201.    An unbiased Arbitrator would have fairly considered the inconsistencies in Ms.

Lee's statements when adjudicating the credibility of her statements.

**ANSWER**:    Denied.

202. The outcome of the arbitration would probably have been different if an unbiased Arbitrator made the credibility determinations.

**ANSWER**:    Denied.

203. The outcome of the arbitration would probably have been different if the UAW objected to the arbitrator or timely moved to terminate the Arbitrator and replace her with an unbiased arbitrator.

**ANSWER**:    Denied.

204. The outcome of the arbitration would probably have been different but for the UAW's activities.

**ANSWER:**    Denied.

**AN AWARD RESULTING FROM CORRUPTION, FRAUD OR UNDUE MEANS, OR AN ARBITRATOR'S "EVIDENT PARTIALITY" SHOULD BE REMANDED[3]**

205. The Federal Arbitration Act requires that:

(a)  In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

> (1)   where the award was procured by corruption, fraud, or undue means;

> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;

> * * *

9 U.S.C. § 10(a)(1)-(2) (2018).

---

[3]    This subsection is repleaded only for purposes of preserving the issue for appeal as to whether the standards derived from federal law, and which have been set forth in the FAA apply to Section 301 and whether Section 301 is violated where an arbitration is conducted with evident partiality or corruption by the arbitrator, including where an Arbitrator fails to disclose that her brother is a key managerial member for one of the parties involved to the adverse real party in interest.

**ANSWER**:    These allegations reflect mere legal conclusions or assertions requiring no admission or denial on the part of Ford.  To the extent a further response is required, Ford denies that the FAA is applicable to the present case.

206.    There was evident partiality in the Arbitration Award when it was issued by VanDagens in favor of Ford and against Plaintiff.

**ANSWER**:    Denied.

207.    As a result of the International UAW and Local UAW's actions, Plaintiff has been damaged.

**ANSWER**:    Denied.

208.     Ford denies each and every allegation set forth above to which a response was not otherwise made or provided.

## PRAYER FOR RELIEF

Ford denies that Plaintiff is entitled to any of the relief requested.

## FURTHER ANSWER AND DEFENSES

In addition to the denials and responses set forth above, Ford asserts the following defenses.  In pleading these defenses, Ford does not admit that it bears the burden of proof, production or persuasion on such defenses.  Further, Ford reserves the right to amend its Answer, to add or delete defenses, and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

**First Defense**:  Plaintiff lacks standing and the Third Amended Complaint fails in whole or in part to state a claim upon which relief can be granted and should be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 12(b)(1) and (6).  Plaintiff cannot establish that the Union breached a duty of fair representation or that Ford breached the

collective bargaining agreement.

**Second Defense**:  The claims and contentions in Plaintiff's Third Amended Complaint are barred in whole in part by the doctrine of express or implied federal preemption in accordance with the provisions Section 301 of the Labor Management Relations Act (29 USC §185(a)), applicable case law and Article VI, Clause 2 of the Constitution of the United States.

**Third Defense**:  Plaintiff's Third Amended Complaint is barred insofar as it fails to allege sufficiently that the umpire in the arbitration forming the basis of this action denied any party a fundamentally fair hearing; does not allege sufficiently any evident bias or prejudice; and otherwise fails to allege any legally or materially cognizable ground for *vactaur* of the award.

**Fourth Defense**:  Plaintiff's claims and contentions in the Third Amended Complaint may be barred, in whole or in part, by principles of waiver and estoppel applicable through pertinent provisions of the relevant collective bargaining agreement and the operative terms and conditions of her membership in the UAW.

**Fifth Defense:**  Plaintiff's claims and contentions in the Third Amended Complaint may be barred, in whole or in part, by the applicable statute of limitations, including but not limited to the six month limitations period for bringing a hybrid Section 301/fair representation claim.

**Sixth Defense:**  Plaintiff's claims and contentions in the Third Amended Complaint may be barred, in whole or in part, by the doctrines of claim splitting, claim preclusion, issue preclusion, estoppel and/or waiver insofar as Plaintiff litigates claims relating to her discharge in *Van v. Ford Motor Company* or any other individual action pursued by Plaintiff.

**Seventh Defense:**  Plaintiff's claims and contentions in the Third Amended Complaint may be barred, in whole or in part, by her failure to exhaust internal union remedies.

**Eighth Defense:**  Plaintiff's purported relief is limited by the narrow scope of review of

labor arbitration awards, which does not involve a review of, or adjudication on, the merits of the underlying claims.

**Ninth Defense**:  Ford reserves the right to amend and/or supplement this answer and the affirmative defenses.

**WHEREFORE**, Ford demands that Plaintiff's Third Amended Complaint be dismissed with prejudice, that Plaintiff be denied any and all requested relief, that Plaintiff take nothing from Ford, that judgment be entered in favor of Ford and against Plaintiff, that the arbitration award of December 13, 2017, be confirmed and enforced and that Plaintiff be ordered to reimburse Ford its reasonable attorney's fees and cost of suit.


DATED:  January 31, 2019                    Respectfully submitted,


                                            /s/ Timothy S. Millman_____
                                            Timothy S. Millman, N.D. Ill. No. 44398
                                            Nicholas L DiVita, N.D. Ill. No. 37514
                                            BERKOWITZ OLIVER LLP
                                            2600 Grand Boulevard, Suite 1200
                                            Kansas City, Missouri 64108
                                            Telephone:     (816) 561-7007
                                            Facsimile:     (816) 561-1888
                                            Email:         tmillman@berkowitzoliver.com
                                                           ndivita@berkowitzoliver.com

                                            Karen Kies DeGrand
                                            DONOHUE BROWN MATHEWSON & SMYTH LLC
                                            140 South Dearborn Street, Suite 800
                                            Chicago, Illinois 60603
                                            Telephone:     (312) 422-0900
                                            Facsimile:     (312) 422-0909

                                            *Counsel for Defendant Ford Motor Company*

## **CERTIFICATE OF SERVICE**

I certify that on this 31st day of January 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system that will send a notice of electronic filing to all counsel of record:

Keith L. Hunt
Bradley E. Faber
HUNT & ASSOCIATES, P.C.
55 W. Monroe St.-#3600
Chicago, Illinois 60603
Telephone:   (312) 558-1300
khunt@huntassoclaw.com
bfaber@huntassoclaw.com

*Counsel for Plaintiff*

Joshua File
Stanley Eisenstein
Katz, Friedman, Eagle, Eisenstein,
Johnson & Bareck
77 West Washington St., 20th Floor
Chicago, Illinois 60602
Telephone:   (312) 263-6330
Facsimile:   (312) 372-5555
jfile@kfeej.com
seisenstein@kfeej.com

*Counsel for UAW Defendants*

/s/ Timothy S. Millman
***Counsel for Defendant Ford Motor Company***

50