**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHRANDA CAMPBELL-SALAHUDDIN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00268 |
| | ) | Honorable Virginia M. Kendall |
| FORD MOTOR COMPANY; | ) | |
| UNITED AUTO WORKERS LOCAL 558; | ) | |
| and INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA (UAW), AFL-CIO, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Timothy S. Millman, N.D. Ill. No. 44398
Nicholas L DiVita, N.D. Ill. No. 37514
**BERKOWITZ OLIVER LLP**
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:   (816) 561-7007
Facsimile:   (816) 561-1888
E-mail:      tmillman@berkowitzoliver.com
             ndivita@berkowitzoliver.com

Karen Kies DeGrand
**DONOHUE BROWN MATHEWSON
& SMYTH LLC**
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:   (312) 422-0900
Facsimile:   (312) 422-0909
E-mail:      degrand@DBMSLAW.COM

*Attorneys for Defendant Ford Motor Company*

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND PROCEDURAL BACKGROUND ............................................ 1

II.  SUMMARY JUDGMENT STANDARD .......................................................... 3

III.  LEGAL ARGUMENT ............................................................................. 3

    A.  Plaintiff Cannot Establish That the UAW Breached Its Duty of Fair
    Representation ............................................................................... 4

        1.  Plaintiff Cannot Prove That by Agreeing to Use Arbitrator
        VanDagens, the UAW Breach Its Duty of Fair Representation. ............... 5

            a.  Plaintiff Has No Evidence of Arbitrator Bias. ............................... 5

            b.  Plaintiff Cannot Prove That the UAW's Conduct Was
            Otherwise Arbitrary, Discriminatory, or in Bad Faith. ................... 8

        2.  Plaintiff Cannot Prove That by Not Presenting Trechon Williams
        as a Witness, the UAW Breached Its Duty of Fair Representation. ......... 11

    B.  Even *if* Plaintiff Could Prove That the UAW Breached Its Duty of Fair
    Representation, Plaintiff Cannot Prove That Ford Lacked Cause to
    Terminate Her Employment on August 29, 2016. ................................. 13

IV.  CONCLUSION .................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Armstrong v. Chrysler Corp.*, 972 F.Supp. 1085 (E.D. Mich. 1997) ........................................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 3

*Cleveland v. Porca Co.*, 38 F.3d 289 (7th Cir. 1994) ................................................... 4, 10, 11, 12

*Consolidated Coal Co. v. Local 1643, United Mine Workers of America*,
   48 F.3d 125 (4th 1995) ............................................................................................................. 8

*Crider v. Spectrulite Consortium, Inc.,* 130 F.3d 1238 (7th Cir. 1997)................................... 4, 13

*Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171 (7th Cir. 1995)................ 4, 5, 9, 10, 11, 12, 13

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976).......................................................... 5

*Hobet Mining, Inc. v. International Union, United Mine Workers of America*,
   877 F.Supp. 1011 (S.D. W.Va. 1994) ...................................................................................... 7

*Hottenroth v. Vill. of Slinger*, 388 F.3d 1015 (7th Cir. 2004)....................................................... 3

*Lippert Tile Co., Inc. v. International Union of Bricklayers and Allied Craftsmen,*
   *District Council of Wisconsin and Its Local 5*, 724 F.3d 939 (7th Cir. 2013).......................... 3

*Moran v. Transport Workers Union of America*, Case No. 13C7730, 2015 WL3814934
   (N.D. Ill. June 17, 2015) ........................................................................................................ 14

*Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363 (7th Cir. 2003) ............................................ 4, 5

*Rogers v. Jewel Food Stores, Inc.*, 2014 WL 4913673 (N.D. Ill. Sept. 30, 2014) ....................... 9

*Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685 (7th Cir. 1982) ............................... 5, 11, 12

*Souter v. International Union, United Auto., Aerospace and...*, 993 F.2d 595
   (7th Cir. 1993)......................................................................................................................... 10

*Thomas v. Reese*, 787 F.3d 845 (7th Cir. 2015)........................................................................... 7

*Truhlar v. John Grace Branch # 825 of Nat. Ass'n of Letter Carriers*,
   600 F.Supp.2d 964 (N.D. Ill. 2009) ...................................................................................... 15

*Truhlar v. U.S. Postal Service*, 600 F.3d 888 (7th Cir. 2010) ..................................................... 4

*Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir. 1991)............................... 5

*Yeftich v. Navistar, Inc.*, 722 F.3d 911 (7th Cir. 2013)............................................................ 4, 9

## Statutes

29 U.S.C. § 185(a) .................................................................................................................... 3

## Rules

F.R.C.P. 56............................................................................................................................... 1

L.R. 56.1(a)(2) ......................................................................................................................... 1

Pursuant to F.R.C.P. 56 and L.R. 56.1(a)(2), Defendant Ford Motor Company ("Ford") submits this Memorandum of Law in Support of its Motion for Summary Judgment on Plaintiff Shranda Campbell-Salahuddin's ("Plaintiff" or "Salahuddin") Third Amended Complaint to Vacate Arbitration Award (Dkt. 40). For the reasons that follow, Ford is entitled to summary judgment on Plaintiff's hybrid suit under Section 301 of the Labor Management Relations Act, and the labor arbitration award should be confirmed, because Plaintiff cannot establish: (1) that her union breached a duty of fair representation, and/or (2) that Ford lacked cause to terminate her employment, such that Ford breached the collective bargaining agreement.

## I.      INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff is a former hourly employee of Ford and a union member. She was discharged for cause in August 2016 after evidence established that she had assaulted Kasha Lee, a female employee of a third-party vendor (ABM). After having received a complaint from Lee, Ford conducted a thorough investigation which established that Plaintiff had intentionally bumped Lee and directed profanity towards her while on a staircase at Ford's Chicago Stamping Plant ("CSP") in June 2016. FSOF 32-33.[1]

Pursuant to a collective bargaining agreement between Ford and the International UAW,[2] Plaintiff's labor union pursued a grievance concerning Plaintiff's discharge, which culminated in binding arbitration on October 17, 2017 before labor arbitrator Kathryn VanDagens ("VanDagens" or "Arbitrator").[3] On December 13, 2017, the Arbitrator issued an Opinion and

---

[1] "FSOF ¶__" is a reference to numbered paragraphs in Defendant Ford Motor Company's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, being filed herewith.
[2] Ford and the International UAW are parties to a collective bargaining agreement: *Agreements between UAW and the Ford Motor Company*, effective beginning November 2015 (the "CBA"). FSOF 35.
[3] As provided in the CBA, only the International UAW, not the Local 588, was a party to the arbitration. FSOF 39. However, because Plaintiff appears to allege otherwise (incorrectly so), Ford will refer to the union defendants collectively as the "UAW."

Award denying the grievance – finding that Ford had just cause to terminate Plaintiff and that the penalty of discharge was not too severe under the circumstances. FSOF 52; Dkt. 40-1 ("Arbitration Award). The Arbitration Award is "final and binding" under the CBA. FSOF 42.

Through this civil action, Plaintiff now seeks to vacate the binding Arbitration Award based primarily on unfounded accusations of arbitrator bias. Plaintiff asserts that the UAW should not have agreed to use VanDagens because her brother was an employee of Ford. But the mere existence of a sibling relationship is insufficient as a matter of law to establish bias, and Plaintiff can point to no actual evidence of bias. Plaintiff also faults the UAW for not presenting Trechon Williams as a witness at the arbitration because, according to Plaintiff, had she been presented, Williams would have recanted on her prior written statement, which had originally corroborated the assault. But again, Plaintiff's contention is founded on hearsay and speculation, not admissible evidence. And, in any event, Plaintiff can point to no evidence connecting an alleged bad faith motive on the part of the UAW to either of these arbitration-related decisions, or to evidence demonstrating that, but for the UAW's conduct in this regard, the outcome of the arbitration would probably have been different.

On July 30, 2018, Plaintiff filed her Third Amended Complaint ("TAC"), which Ford and the UAW moved to dismiss – arguing that Plaintiff had failed (for the second time) to plausibly allege that the UAW engaged in conduct toward Plaintiff, with respect to the grievance arbitration, that was arbitrary, discriminatory, or in bad faith. Dkt. 41-42, 44-45. On January 11, 2019, the Court denied the motions to dismiss, holding:

> Overall, although the Third Amended Complaint is by no means a model pleading . . . it contains sufficient allegations to state a claim for breach of the UAW Defendants' duty of fair representation with respect to the unions' failure to terminate the arbitrator and the unions' failure to present Williams's testimony at the hearing. .

> . . Of course, Salahuddin will have to adduce facts supporting her
> claims to survive summary judgment.

Memorandum Opinion and Order, at 21 (Dkt. 57).

Thereafter, fact discovery commenced, but Plaintiff failed to serve any written discovery or take any depositions before discovery closed on July 5, 2019. The Court thereafter permitted Plaintiff until July 29, 2019 to obtain a copy of the "arbitration record" (Dkt. 90), which she eventually obtained from the UAW. Although having been given the opportunity, Plaintiff has failed to develop any evidence, and is incapable of adducing any facts, supporting her claims.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered in favor of the defendant when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[B]are allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (citations/quotation omitted).

## III.   LEGAL ARGUMENT

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), provides for suits based on alleged violations of contracts between an employer and a labor organization, such as collective bargaining agreements. *Lippert Tile Co., Inc. v. International Union of Bricklayers and Allied Craftsmen, District Council of Wisconsin and Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013). "[W]hen employees are represented by a union they are not parties to either the collective bargaining agreement or any union-company arbitration. They

therefore generally cannot challenge, modify, or confirm the award in court." *Cleveland v. Porca Co.*, 38 F.3d 289, 296-97 (7th Cir. 1994). "An exception to this general rule exists which allows employees to challenge or confirm a union-company arbitration award *but only if* the employees state a claim for a Section 301 fair representation case and the challenge or confirmation is integral to the case." *Id.* at 297. "The idea behind § 301 is that a union member should have judicial recourse if, during the arbitration process, his union completely bungles (or intentionally sabotages) an otherwise meritorious grievance." *Truhlar v. U.S. Postal Service*, 600 F.3d 888, 891-92 (7th Cir. 2010). To prevail on a Section 301 hybrid claim, a plaintiff must prove **both** (1) that the union breached its duty of fair representation **and** (2) that the employer breached the collective bargaining agreement. *See Crider v. Spectrulite Consortium, Inc.,* 130 F.3d 1238, 1241 (7th Cir. 1997) ("the employee's claim against the union and his claim against the employer are interlocked: neither claim is viable if the other fails"). Here, summary judgment is warranted because Plaintiff cannot prove either one of her interlocking claims.

### A. Plaintiff Cannot Establish That the UAW Breached Its Duty of Fair Representation.

"A union violates its duty of fair representation to the employees it represents only if its actions are arbitrary, discriminatory, or in bad faith." *Cleveland*, 38 F.3d at 295 (quotations omitted). The union enjoys "substantial discretion" in fulfilling its duty. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917 (7th Cir. 2013). "Only an egregious disregard for union members' rights qualifies as a breach of the union's duty." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). "Whether a union's actions are arbitrary calls for an objective inquiry." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Cleveland*,

4

38 F.3d at 295 (quotations omitted). "This is an extremely deferential standard that precludes the courts from substituting their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Neal*, 349 F.3d at 369 (quotations omitted). "Whether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369. "To establish bad faith or discrimination, the union member must adduce substantial evidence of fraud, deceitful action or dishonest conduct." *Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685, 691 (7th Cir. 1982).

In addition to arbitrary, discriminatory, or bad faith conduct, a plaintiff must also establish that she "was actually harmed by the union's actions." *Garcia*, 58 F.3d at 1177-78 (citations omitted). Thus, a plaintiff must present evidence "that the outcome of the arbitration would probably have been different but for the union's activities." *Id.* at 1176-77; *see also Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir. 1991) ("the plaintiff must establish that the Union's breach actually affected the outcome of the arbitration"); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976) ("where the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings").

### 1. Plaintiff Cannot Prove That by Agreeing to Use Arbitrator VanDagens, the UAW Breach Its Duty of Fair Representation.

#### a. Plaintiff Has No Evidence of Arbitrator Bias.

Regardless of the particular criticism advanced by Plaintiff, Plaintiff's claim that the UAW breached its duty of fair representation requires a showing of arbitrator bias. Although the

Court accepted Plaintiff's allegations of bias as true for purposes of the motions to dismiss, the Court made clear that "Salahuddin will need to point to *evidence* of VanDagen's bias on summary judgment." Dkt. 57 at 15 (emphasis added). Plaintiff has no such evidence.

Most significantly, this is not a case where the arbitrator failed to disclose a conflict, such that the arbitrator's motives might be questioned. Here, when first contacted by the Ford/UAW Office of the Umpire regarding her availability to serve as an arbitrator in future hearings, VanDagens immediately disclosed her sibling relationship via email dated June 13, 2017:

> Prior to accepting any appointment, I feel it prudent to disclose that my brother, Doug VanDagens, is a Global Director at Ford Motor Company. Would you please forward this disclosure to representatives from the Company and the Union. If the parties schedule arbitration hearings, I will infer that neither party has an objection to my serving as arbitrator, despite this disclosure.

FSOF 45-47. Given this prompt and direct disclosure, Plaintiff's contention that VanDagens breached an ethical duty, or should otherwise be presumed biased, is without merit.

According to the TAC, Plaintiff will attempt to establish bias by expressing her disagreement with VanDagen's rulings – but that is insufficient. Specifically, Plaintiff criticizes VanDagens for finding the accuser's testimony direct and plausible (TAC ¶¶ 180-81, 199) (Dkt. 40);[4] for considering a signed witness statement, which Plaintiff believes is hearsay (*id.* ¶¶ 182, 187); and for considering the testimony of a supervisor regarding Plaintiff's late arrival to her job, instead of crediting Plaintiff's proclaimed arrival time (*id.* ¶¶ 189-198). However, contested arbitrations typically involve two sides of the story, which include witnesses telling different versions of the same event, evidentiary rulings, and a need for the fact-finder to make credibility determinations. But the mere fact that the VanDagens ruled against Plaintiff and/or found other

---

[4] VanDagens described any differences between Lee's interview statement and her testimony as "minor" and found her testimony "direct and plausible." Dkt. 40-1 at 3. In contrast, VanDagens found Plaintiff's denials to be "self-serving and not particularly credible," and concluded that to accept Plaintiff's account of events, she would have to find that three (3) other witnesses were lying or mistaken. *Id.*

witnesses to be more credible than Plaintiff is insufficient to demonstrate bias. *See, e.g., Thomas v. Reese*, 787 F.3d 845, 849 (7th Cir. 2015) ("Adverse rulings do not constitute evidence of judicial bias."). As this Court already found, "the record of the arbitration hearing … indicates that [the Arbitrator] thoroughly analyzed [Plaintiff's] case." Dkt. 39 at 7-8.

Nor can Plaintiff point to any evidence establishing a connection between VanDagen's sibling relationship and the outcome of the arbitration. The Court previously rejected Plaintiff's argument that "any labor arbitrator whose brother is an employee of a grievant's employer is automatically unqualified as biased or partial." Dkt. 39 at 7; *see also Hobet Mining, Inc. v. International Union, United Mine Workers of America*, 877 F.Supp. 1011, 1021 (S.D. W.Va. 1994) (even where the arbitrator failed to disclose a sibling relationship, partiality was not presumed: it is "more appropriate to examine the nature of the relationship and its connection to the arbitration dispute to determine whether [plaintiff] has met its burden of proving direct and definite partiality or specific facts indicating improper motive" on the part of the arbitrator).

Here, it is undisputed that VanDagen's brother, Doug VanDagens, had no connection whatsoever to Plaintiff's termination or the arbitration. FSOF 53-57. He was employed by Ford as Director of Connected Services Solutions. His group was part of Product Development and his office was located in Dearborn, Michigan. FSOF 53. He did not have any role or involvement in the human resources functions at CSP for its hourly employees, like Salahuddin. FSOF 54. He was not involved in any way in the decision to terminate Salahuddin's employment in August 2016. FSOF 54. He did not have any role or involvement in dispositioning union grievances involving Ford hourly employees from CSP or for representing Ford in labor arbitrations involving hourly employees from CSP. FSOF 55. He had no involvement in dispositioning Salahuddin's grievance, selecting the Arbitrator, or conducting the

Arbitration Hearing. FSOF 56. Further, Plaintiff can point to no evidence that VanDagens or her brother had any interest in the outcome of the arbitration. *See*, *e.g.*, *Consolidated Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 130 (4th 1995) (finding of per se bias on the part of the arbitrator with sibling relationship was clearly erroneous where the challenging party "failed to demonstrate any partiality or improper motive on the part of Arbitrator Roberts or that he and his brother [who was employed by the defendant union] had any interest in the outcome of the disputed arbitration"). Although having been allowed discovery, Plaintiff can point to no evidence showing that VanDagens was actually biased or partial – which is fatal to her claim.

### b. Plaintiff Cannot Prove That the UAW's Conduct Was Otherwise Arbitrary, Discriminatory, or in Bad Faith.

Additionally, Plaintiff can point to no evidence demonstrating that the UAW's failure to terminate VanDagens was so egregious as to be deemed arbitrary, discriminatory, or done in bad faith. Plaintiff has previously argued that the UAW acted arbitrarily and in bad faith when it "lied to the Plaintiff and intentionally withheld information *regarding the arbitrator's bias and conflict of interest*; and when they agreed to and permitted the *biased Arbitrator* to uphold Plaintiff's termination." Pl's. Resp. at 2 (Dkt. 51) (emphasis added). But again, Plaintiff's contentions put the cart-before-the-horse and *assume* that the Arbitrator was actually biased, that the UAW knew the Arbitrator was actually biased, and that the UAW agreed to the Arbitrator knowing she would uphold Plaintiff's termination regardless of its merits. However, and fatally, Plaintiff cannot point to any *evidence* supporting these assumptions. For that matter, there is no evidence to suggest that the UAW set out to lose the arbitration, which would be incredible given the effort and expense they invested, including their 14-page Post–Hearing Brief. Dkt. 34-1.

Moreover, Plaintiff has no evidence demonstrating that the UAW knowingly withheld or concealed information from Plaintiff about the arbitrator's relationship *because of* a bad faith motive. In other words, allegedly telling Plaintiff that they do not know anything about the arbitrator fails to address the *motive* behind that alleged conduct. *See*, *e.g.*, *Yeftich*, 722 F.3d at 917 (allegations that "the union lied to the plaintiffs, saying that the grievances were being processed when in fact they weren't" were insufficient to plausibly state a claim under section 301); *see also Rogers v. Jewel Food Stores, Inc.*, 2014 WL 4913673, \*5 (N.D. Ill. Sept. 30, 2014) (allegations that the union "concealed or failed to inform her that it was not investigating her grievance" were insufficient to infer a bad faith motive for the union's decision not to pursue the grievance). While Plaintiff suggests that the UAW was improperly motivated by her history of complaints, she has yet to present any evidence establishing such a motive or causal connection.

Indeed, it is equally plausible that the UAW did not share such information with Plaintiff because she did not have a right to control the grievance procedure, was not involved in making strategic decisions, and did not have the experience to make such decisions. As the Court has recognized, Plaintiff "does not challenge the obvious alternative explanation that the UAW Defendants' took account of the Arbitrator's relationship and used their judgment in agreeing to or failing to object to the Arbitrator." Dkt. 39, at 9. Additionally, whether or not the UAW should have told Plaintiff about the sibling relationship is ultimately immaterial. Plaintiff was not a party to the arbitration and did not have standing to lodge any objections to the Arbitrator.[5]

---

[5] The Court previously held that "the alleged failure on behalf of the UAW Defendants to inform Salahuddin about VanDagens's brother in a timely fashion fails to state a fair-representation claim. It does not allege a breach of the CBA and, as Defendants correctly assert, it does not plausibly allege causation, or that 'the outcome of the arbitration would probably have been different but for the union's activities.'" Dkt. 57 at 18-19 (*quoting Garcia*, 58 F.3d at 1177).

Moreover, even *if* Plaintiff could present sufficient evidence that the UAW's failure to terminate VanDagens was arbitrary, discriminatory, or done in bad faith, Plaintiff has no evidence that "the outcome of the arbitration would probably have been different but for the union's activities." *Garcia*, 58 F.3d at 1177. Significantly, Plaintiff's speculation in that regard relies entirely on the unsupported assumption that arbitrator VanDagens was biased. *See*, *e.g.*, Dkt. 40, TAC at ¶ 200 (a "non-biased arbitrator would have probably reached a different conclusion regarding whether or not Plaintiff should have been terminated"). But again, at this stage of the case, Plaintiff must present actual evidence, not mere theories.

As explained in the Arbitration Award, the testimony and/or statement of three different witnesses supported a finding that Plaintiff had committed an assault against another worker and/or was not credible regarding key facts. Arbitration Award, pp. 3-4 (Dkt. 40-1). At the very least, a different arbitrator could have been persuaded by the same evidence. *See*, *e.g.*, *Garcia*, 58 F.3d at 1178 (in finding that plaintiff "failed to show that the outcome would probably have been different" had he been called to testify by the union, the court explained: "[i]t is certainly possible that the arbitrator would have found [plaintiff] a sympathetic witness and ruled differently, but it is equally possible that [plaintiff's] testimony would have done him more harm than good"). Without evidence demonstrating that the Arbitration Award was the result of actual bias and/or that a different arbitrator would have reached a different conclusion, Plaintiff cannot establish that the outcome of the arbitration would probably have been different but for the UAW's agreement to use VanDagens. *Cleveland*, 38 F.3d at 295; *see also Souter v. International Union, United Auto., Aerospace and…*, 993 F.2d 595, 598 (7th Cir. 1993) (rejecting breach of fair representation claim where the "employee suffers no injury").

## 2. Plaintiff Cannot Prove That by Not Presenting Trechon Williams as a Witness, the UAW Breached Its Duty of Fair Representation.

Plaintiff alleges that the UAW should have presented Trechon Williams as a witness at the arbitration. Dkt. 40, TAC at ¶¶ 182-186, 200. But this allegation consists of second-guessing a strategic decision made by the UAW – which does not demonstrate that "the union's behavior [was] so far outside a wide range of reasonableness, as to be irrational." *Cleveland*, 38 F.3d at 295 (quotations omitted). Plaintiff's Monday-morning quarterbacking is a classic example of the type of strategic decisions that are left to the sound discretion of the union. *See, e.g., Garcia*, 58 F.3d at 1176 ("only an egregious disregard for union members' rights constitutes a breach of the union's duty") (quotations omitted); *see also Rupe*, 679 F.2d at 692 (demonstrating "mere errors of judgment" is insufficient).

Plaintiff acknowledges that Williams had previously provided a written statement corroborating the accuser's account of events (and disputing Plaintiff's account). Dkt. 40, TAC at ¶ 182. Plaintiff now predicts that Williams would have recanted her statement if called to testify. *Id.* at ¶¶ 184-86. At the very least, Plaintiff's prediction is speculation and based on double-hearsay: she claims to have been told by someone that Williams told another person named "Dede" that she refused to testify at the arbitration because Lee's allegations were untrue. Dkt. 40, TAC ¶ 185. Additionally, if required to appear, Williams may not have recanted, but instead confirmed her prior statement to the further detriment of Plaintiff. And, even if she did recant, it is equally likely that any arbitrator would assign more credibility to the written statement she gave at the time in question. Alternatively, Williams may have refused to testify altogether, as she was a former employee of a third party contractor (ABM). FSOF 10.

In any event, Plaintiff's criticisms of the UAW's strategic decision pale in comparison to other strategic decisions that the Seventh Circuit has previously held to be insufficient to

11

demonstrate arbitrary behavior. In *Garcia*, the plaintiff attacked the union's behavior in not presenting the testimony of plaintiff's coworker, not calling the plaintiff to testify at the arbitration, not reviewing key video evidence, and not calling a single witness of its own. *Garcia*, 58 F.3d at 1177-79. The court explained that the union attorney's "strategy and presentation may not have been Garcia's preferred approach, and [the union attorney] may not have been as thorough as he might have been. However, Garcia does not prove disregard for his case sufficient to meet the standard imposed on the Union. [The union attorney] pursued a rational strategy with sufficient competence and vigor to meet the burden of some minimal investigation of employee grievances, and showed no egregious disregard for union members' rights constitut[ing] a breach of the union's duty." *Id.* at 1179 (quotations omitted).

Here, the UAW's strategic decision to not call Williams (assuming she would have appeared) does not satisfy the requirements of a malpractice suit, and it certainly does not demonstrate "behavior [that was] so far outside a wide range of reasonableness, as to be irrational." *Cleveland*, 38 F.3d at 295 (quotations omitted); *see also Garcia*, 58 F.3d at 1176 ("[w]hat is required to be shown goes considerably beyond the requirements of a malpractice suit"). As this Court has recognized, the Court has limited discretion to challenge strategic choices made by the union in the course of their representation. Mem. Opinion, Dkt. 39 at 9; *see also Rupe*, 679 F.2d at 692 (demonstrating "mere errors of judgment" is insufficient).

Moreover, Plaintiff has no evidence demonstrating that the UAW failed to present Williams as a witness at the arbitration *because of* a bad faith motive. Again, while Plaintiff has suggested that the UAW was improperly motivated by her history of complaints, she has yet to present any *evidence* demonstrating such a motive and/or establishing a causal connection between said complaints and this strategic decision.

12

Further, Plaintiff has no evidence demonstrating that, had the UAW tried to present Williams as a witness, the outcome of the arbitration would probably have been different. *See Garcia*, 58 F.3d at 1177 (a plaintiff must establish that "the outcome of the arbitration would probably have been different but for the union's activities"). As explained above, if called, Williams may have testified consistent with her prior statement or refused to appear, or even if she appeared and recanted her prior statement, the arbitrator may have found her prior statement, given at the time in question, to be more credible. *See, e.g., Garcia*, 58 F.3d at 1178 ("it is equally possible that [plaintiff's] testimony would have done him more harm than good"). In summary, Plaintiff has failed to present evidence showing that the UAW breached its duty of fair representation by not presenting Williams.[6]

### B. Even *if* Plaintiff Could Prove That the UAW Breached Its Duty of Fair Representation, Plaintiff Cannot Prove That Ford Lacked Cause to Terminate Her Employment on August 29, 2016.

"The substantive law in a section 301 suit for breach of the collective bargaining agreement is federal common law rather than state law." *Crider,* 130 F.3d at 1242. Under the UAW-Ford CBA, Ford has "the sole right" to discipline and discharge employees "for cause." FSOF 36. "Whether the undisputed facts of a particular case establish just cause is a question of law for the court." *Crider*, 130 F.3d at 1242. "Just cause is a flexible concept, embodying notions of equity and fairness." *Id.* Here, the undisputed evidence establishes that Ford had just cause to discharge Salahuddin on August 29, 2016, for assault.

Throughout 2016, CSP had General Safety Rules providing that "Horseplay and fighting are strictly prohibited." FSOF 6; *see, e.g., Moran v. Transport Workers Union of America*, Case

---

[6] The Court has already held that other alleged evidentiary failures – "the failure to call certain witnesses who would have corroborated her account and the failure to object to the testimony of her supervisor" – amount to "mere errors of judgment, [that do] not plausibly allege arbitrary actions so as to lend support to the fair-representation claim." Dkt. 57 at 20 (quotations omitted). And, that Plaintiff "does not appear to allege that these failures were conducted with the same bad-faith motive as already discussed." *Id.*

No. 13C7730, 2015 WL3814934, *3 (N.D. Ill. June 17, 2015) (American Airlines' "Rules of Conduct provide some guidance" as to what constitutes "just cause").  On June 28, 2016, Kasha Lee, an ABM janitorial employee, reported a complaint to CSP's Labor Relations office regarding an incident with Salahuddin. FSOF 9-10.  Lee reported that on June 22, 2016, at around 2:15 PM, Salahuddin "walked towards" her on the stairs at location k-30, "bumped [her] real hard" and said "why the fuck didn't you move then? . . . now what, now what."  FSOF 10, 13.  Lee identified Trechon Williams as a witness and reported that she (Lee) had not had any previous issues with Salahuddin.   FSOF 10-13.   Labor Relations conducted a thorough investigation, which included, among other things, interviewing Lee, Williams and Salahuddin. FSOF 11.  Labor Relations also interviewed Salahuddin's supervisor (Kevin Danielson), one of her area hourly male co-workers, and Lee's ABM supervisor (Rick Klein).  FSOF 11.

In her interview statement, Salahuddin denied knowing Lee, seeing Lee on the stairwell, or having any physical altercation or conversation with any ABM employee on June 22, 2016. FSOF 20-21.  She reported that her supervisor, Kevin Danielson, could confirm she was working on the line between 2:00 and 2:30 PM on June 22, 2016.  FSOF 21.  However, Trechon Williams confirmed witnessing the incident and, consistent with Lee's account of the events, reported that Salahuddin "purposely walked into Kasha Lee and bumped her, hard," that when Lee asked Salahuddin why she did that, Salahuddin said "you seen me coming, why the fuck didn't you move," and that Salahuddin "kept walking and was cursing more, and was saying, 'what, now what….'"  FSOF 15, 19.  Williams reported that Lee did not react and just shook her head, and that she (Williams) has no idea why the incident happened.  FSOF 19.  Further, Lee's ABM supervisor (Klein) reported that Lee and Williams had reported the stairway incident to him immediately after it occurred (on June 22) and that Lee appeared very upset.  FSOF 25-26.

Additionally, Salahuddin's supervisor (Danielson) reported that Salahuddin was not on the line at 2:00 PM on June 22 and is never on the line before 3:00 PM. FSOF 23-24. Salahuddin's frequent absence from the line was also corroborated by an hourly employee from her work area and Salahuddin's work history report. FSOF 27-28.

Thereafter, in July 2016, CSP Labor Relations prepared an Investigation Summary providing a summary of the issues, evidence and findings – including that Williams confirmed witnessing Salahuddin bump Lee in the shoulder and direct profanity towards her. FSOF 30. Ford also identified two other female hourly employees at CSP, as comparators, who were discharged in June 2016 for assault (a bumping and a shoving). FSOF 31. Thus, as a result of the investigation, corroborating evidence and comparators, Ford reasonably concluded that Salahuddin had committed an assault on Lee, in violation of CSP's General Safety Rules, and that termination was the appropriate penalty. FSOF 32-33. Accordingly, Ford had sufficient cause under the CBA for terminating Salahuddin's employment on August 29, 2016 for "Assault Upon an Employee." *See, e.g., Truhlar v. John Grace Branch # 825 of Nat. Ass'n of Letter Carriers*, 600 F.Supp.2d 964, 974 (N.D. Ill. 2009) (employer "could have concluded from the evidence before it that there was just cause to conclude that Plaintiff had violated the [Employee and Labor Relations Manual]"); *Armstrong v. Chrysler Corp.*, 972 F.Supp. 1085, 1091 (E.D. Mich. 1997) (in "[r]elying on the statements made by plaintiff, the victim, and the two unbiased eyewitnesses to the incident, Chrysler *reasonably determined* that plaintiff had engaged in prohibited conduct" under Chrysler's "Standards of Conduct," which prohibited "Fighting, 'horseplay' or other disorderly, disruptive or unruly conduct") (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff cannot establish a Section 301 hybrid claim. Summary judgment should be granted in favor of Ford, with the arbitration award confirmed.

15

Dated:  August 15, 2019              Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By:  / s/ Timothy S. Millman
    Timothy S. Millman, N.D. Ill. No. 44398
    Nicholas L DiVita, N.D. Ill. No. 37514
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  (816) 561-7007
    Facsimile:  (816) 561-1888
    E-mail:      tmillman@berkowitzoliver.com
                  ndivita@berkowitzoliver.com

    Karen Kies DeGrand
    **DONOHUE BROWN MATHEWSON**
    **& SMYTH LLC**
    140 South Dearborn Street, Suite 800
    Chicago, Illinois 60603
    Telephone:  (312) 422-0900
    Facsimile:  (312) 422-0909
    E-mail:      degrand@DBMSLAW.COM

    *Attorneys for Defendant Ford Motor Company*

16

## CERTIFICATE OF SERVICE

I certify that on this 15th day of August 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

/s/ Timothy S. Millman
***Attorney for Defendant Ford Motor Company***

17