IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHRANDA CAMPBELL-SALAHUDDIN, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY; UNITED AUTO WORKERS LOCAL 588; and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), <br><br> Defendants. | No. 18-cv-00268 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

In August 2016, Plaintiff Shranda Campbell-Salahuddin was fired for assaulting a janitor at the Chicago Stamping Plant of Defendant Ford Motor Company. Plaintiff, who denied the assault happened, filed a grievance with her union, Defendant UAW Local 588, challenging her termination and seeking reinstatement. Under the collective bargaining agreement between Ford and Defendant International UAW, Plaintiff's labor union pursued the grievance through every stage of the dispute resolution process. This process culminated in binding arbitration between Ford and UAW Local 588.

On December 13, 2017, the arbitrator determined Ford had just cause for its decision—the assault—and upheld Plaintiff's termination. Contesting her termination, Plaintiff filed this action seeking to vacate the award under Section 301

of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), against Ford and the UAW Defendants (collectively, "the UAW"). Plaintiff alleges that the UAW breached its duty of fair representation in processing her grievance and that Ford lacked just cause to terminate her employment. In turn, Defendants Ford and UAW now individually move for summary judgment. (Dkts. 102, 109.) Both motions have been fully briefed.[1]

For the reasons that follow, Plaintiff's claims fail as a matter of law. In January 2019, the Court, by the previously-assigned Judge Kendall, denied Defendants' motions to dismiss but cautioned that Plaintiff would "have to adduce facts supporting her claims to survive summary judgment." (Dkt. 57 at 21.) Plaintiff, however, has failed through discovery to develop further evidence in support of her fair representation claim; and all that remains are unsupported accusations insufficient to survive summary judgment. Because Plaintiff's right to sue Ford for breach of the CBA under Section 301 is conditioned on Plaintiff establishing a fair representation case against the UAW, Plaintiff's second claim necessarily also fails as a matter of law. Accordingly, Defendants' motions for summary judgment are granted.

## I. BACKGROUND

Plaintiff is a former hourly employee of Ford at its Chicago Stamping Plant (the "Plant") and member of the UAW. (Plaintiff's Response to Defendant Ford's

---

[1] Subject matter jurisdiction exists under 28 U.S.C. § 1331: this case raises a federal question under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (Dkt. 153 at 2; Dkt. 154 at 2.)

2

Statement of Material Facts ("Pl's Resp. FSOF"), Dkt. ¶ 4; Plaintiff's Response to UAW Defendants' Statement of Material Facts ("Pl's Resp. USOF"), Dkt. 154 ¶ 4.)[2] On June 22, 2016, a janitor at the Plant, Kasha Lee, told Ford's labor relations office that Plaintiff had "bumped" Lee in the stairwell and then said "why in the f*** didn't you move[,] now what." (Pl's Resp. FSOF ¶ 10; Pl's Resp. USOF ¶ 13.) During the ensuing investigation that Ford conducted, Plaintiff denied this incident ever took place. (Pl's Resp. FSOF ¶ 21.)

Ford and UAW are parties to a collective bargaining agreement providing Ford with "the sole right to discipline and discharge employees for cause." (Pl's Resp. FSOF ¶¶ 35-36.) The Plant's General Safety Rules provided that "Horseplay and fighting are strictly prohibited." (*Id.* ¶ 6.) Ford's Anti-Harassment Policy further prohibited harassment of any kind and specified that discipline for violations included termination. (*Id.* ¶ 7.) Both rules were in effect in 2016 and re-affirmed by the CBA's Zero-Tolerance provision. (*Id.* ¶ 8.)

Ford investigated Lee's complaint, which included interviewing Lee (twice); Trechon Williams, a witness to the incident (twice); Plaintiff; Plaintiff's co-worker; and Plaintiff's supervisor. (*Id.* ¶¶ 10-11, 16.) Ford also considered as comparators examples of other employees discharged in June 2016 for assault. (*Id.* ¶ 31.) After assessing the results of the investigation, corroborating evidence, and comparators,

---

[2] At the outset, Defendants object to Plaintiff's Statement of Additional Material Facts for relying on transcripts Plaintiff created from an unofficial audio recording of the arbitration hearing. (Dkt. 164 at 1-3; Dkt. 166 at 1-2.) The UAW also contends that Plaintiff's pleading violates Local Rule 56.1's forty-statements limit and contains irrelevant factual assertions. Because the Court grants Defendants' motions for summary judgment, the objections and the motion to strike the offending paragraphs are dismissed as moot.

3

Ford terminated Plaintiff on August 29, 2016 for assault upon an employee in violation of the Plant's rules. (*Id.* ¶¶ 32-33.) Plaintiff then lodged a grievance with the UAW.

UAW prosecuted Plaintiff's grievance according to the CBA's dispute resolution clause, challenging Plaintiff's termination and seeking her reinstatement. (*See Id.* ¶¶ 37-43; Pl's Resp. USOF ¶ 14.) This process culminated in a binding arbitration before Arbitrator Katheryn VanDagens. (*See* Pl's Resp. FSOF ¶¶ 42-43; Pl's Resp. USOF ¶¶ 15-17.) At the relevant time, Arbitrator VanDagens was a duly-elected member of the National Academy of Arbitration and held the highest qualifications available to labor arbitrators. (Pl's Resp. FSOF ¶ 48; Pl's Resp. USOF ¶ 23.) When VanDagens presided over the matter, Ford also employed VanDagen's brother in Ford's Product Development group. (Pl's Resp. FSOF ¶ 53.) VanDagens disclosed this fact before any arbitration hearings were scheduled. (Pl's Resp. FSOF ¶¶ 46-47; Pl's Resp. USOF ¶ 25.) It is undisputed that VanDagens's brother played no role in the decision to terminate Plaintiff or in the disposition of union grievances at Ford. (Pl's Resp. FSOF ¶¶ 54-57.) Given VanDagens's qualifications, the UAW found no reason to disqualify her "simply because her brother worked for Ford[,]" and the arbitration hearing went forward on October 17, 2017 in Chicago. (Pl's Resp. FSOF ¶ 48; Pl's Resp. USOF ¶ 26.)

Although the UAW and Ford presented witness testimony and exhibits at the arbitration hearing (Pl's Resp. FSOF ¶ 50), neither party called Trechon Williams, a Ford employee identified by Lee as a witness to the assault, to testify. (Pl's Resp.

4

USOF ¶ 30.) During Ford's internal investigation, Williams had provided a signed, written statement that corroborated the assault allegations against Plaintiff.[3] (*Id.* ¶ 31.) VanDagens considered the report in her Opinion and Award. (Dkt. 110-1 at 2.)

On December 13, 2017, VanDagens issued an Opinion and Award denying the grievance and affirming that Ford had just cause to discharge Plaintiff. (Pl's Resp. FSOF ¶ 52.) Because Plaintiff's and Lee's versions of the incident contradicted each other, much of the decision rested on VanDagens's credibility resolutions. In the end, VanDagens found Lee's version of the incident to be "direct and plausible" and Plaintiff's denials "self-serving and not particularly credible." (Dkt. 110-1 at 3, 4.) That fact, combined with VanDagens's analysis of "just cause," led VanDagens to uphold Plaintiff's termination.

Plaintiff now seeks in this federal lawsuit against Ford and the UAW to vacate the arbitration award. (*See generally* Dkt. 40.) Plaintiff argues that the UAW breached its duty of fair representation because it selected a biased arbitrator, concealed such alleged bias from Plaintiff, and failed to present evidence that would

---

[3] Although Plaintiff now denies this fact, Plaintiff acknowledged in her complaint that Williams had provided a written statement corroborating Lee's account of the incident. (*Compare* Dkt. 40 ¶ 182 *with* Pl's Resp. FSOF ¶¶ 14-15, 18-19.) Plaintiff denies this statement of fact on the grounds that William's written statement constitutes hearsay because neither Ford's investigator nor Williams testified at the arbitration hearing to authenticate the report or its contents. (*Id.*) But "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statements." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (recognizing agreement among circuits). In any event, VanDagens decided to consider and explicitly referenced William's statement in her Opinion and Award (Dkt. 110-1 at 2), which Plaintiff attached to her operative complaint. That William's statement may have been hearsay at the arbitration hearing is of no matter. *See Slaney v. The Int'l Amateur Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) ("[a]rbitrators are not bound by the rules of evidence") (quoting *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203-04 n.4 (1956)).

5

have confirmed Plaintiff's version of the events. (*See* Dkt. 148 at 3-12.) Plaintiff also contends that Ford breached the CBA by terminating her without cause. (*See id.* at 12-15.) In January 2019, the Court, by Judge Kendall, denied Defendants' motions to dismiss, noting that Plaintiff "[o]f course, will have to adduce facts supporting her claims to survive summary judgment." (Dkt. 57 at 21.) But beyond obtaining an inadmissible audio recording, Plaintiff has not since that time served any written discovery or taken any depositions. Defendants now individually move for summary judgment. (*See generally* Dkts. 102, 109.)

## II.  LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."

6

*Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to Plaintiff as the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. DISCUSSION

Judicial review of arbitration awards rendered under a collective bargaining agreement is extremely limited. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) (Where "[t]he agreement is to submit all grievances to arbitration," courts have "no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim"); *United Food and Com. Workers, Local 1546 v. Ill.-Am. Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (courts show "extreme deference" to an arbitrator's award in a dispute about a collective bargaining agreement); *Butler Mfg. Co. v. United Steelworkers Am.*, 336 F.3d 629, 630 (7th Cir. 2003) ("Agreements to arbitrate disputes [in] collective bargaining agreements . . . are entitled to a hospitable reception in the courts").

This deference is not absolute; an arbitrator "does not sit to dispense [her] own brand of industrial justice." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Federal courts must enforce an arbitration award "unless it fails to draw its essence from the collective bargaining agreement." *Arch of Ill., Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996) (internal quotations omitted). An award does not draw its essence from the

7

CBA "only when the arbitrator *must have* based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Id.* at 1293; *Ameren Ill. Co. v. Int'l Bhd. Elec. Workers*, 906 F.3d 612, 617 (7th Cir. 2018).

Plaintiff brings this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which provides for federal subject-matter jurisdiction over "[s]uits for violation of contracts [such as a CBA] between an employer and a labor organization." *Lippert Tile Co., Inc. v. Int'l Union of Bricklayers and Allied Craftsmen, Dist. Council of Wis. and Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013). Although union employees, like Plaintiff, generally lack standing to challenge union-company arbitration awards because they are not themselves parties to the arbitration or the CBA, there is a long-developed body of law recognizing union employees' right, if certain conditions are met, to sue their employer under Section 301 for breach of contract. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163 (1983) ("It has long been established that an individual employee may bring suit against [their] employer for breach of a collective bargaining agreement").

To prevail on a Section 301 claim, a union employee must establish that *both*: (1) the union breached its duty of fair representation; and (2) the employer breached the CBA. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013). This is otherwise known as a "hybrid claim," because "it is comprised of two causes of action that are 'inextricably interdependent.' " *McLeod v. Arrow Marine Transp.*, 258 F.3d 608 (7th Cir. 2001); *see Crider v. Spectrulite Consortium, Inc.,* 130 F.3d 1238, 1241 (7th Cir. 1997) ("the employee's claim against the union and his claim against the employer

8

are interlocked: neither claim is viable if the other fails"). Unless Plaintiff "can establish that the integrity of the grievance process was subverted by the union"—by stating a fair representation claim against UAW—the Court may not "displace the decision reached by the arbitral body created by the [CBA]." *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 915 (7th Cir. 1989); *see also Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891-92 (7th Cir. 2010) ("The idea behind § 301 is that a union member should have judicial recourse if, during the arbitration process, [their] union completely bungles (or intentionally sabotages) an otherwise meritorious grievance").

### A. UAW Did Not Breach Its Duty of Fair Representation.

As the exclusive bargaining agent for a class of employees, a union is accorded "considerable discretion in dealing with grievance matters." *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). This broad authority originates from employees' choice to exercise their right to self-organization and benefit from pooled economic strength. *Id.* at 1175. But the union's authority is limited by a concomitant duty of fair representation to each of its members. *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994). A union breaches this duty if its actions are "arbitrary, discriminatory, or in bad faith." *Taha v. Int'l Bros. Teamsters, Local 781*, 947 F.3d 464, 470 (2020). A plaintiff must also establish that the union's actions caused the plaintiff to suffer actual harm. *Garcia*, 58 F.3d at 1177. Effectively, therefore, a plaintiff must show that the outcome of the arbitration would probably have been different but for the union's conduct. *Id.*

Plaintiff challenges three aspects of the UAW's conduct. Plaintiff alleges that the UAW: (1) failed to select an impartial arbitrator; (2) intentionally concealed the arbitrator's alleged bias; and (3) failed to present dispositive evidence at the arbitration. (Dkt. 148 at 4.) These arguments are addressed in turn.

*1.     Plaintiff Has Not Established Arbitrator Bias*

Plaintiff contends that the UAW breached its duty of fair representation when it failed to select an impartial arbitrator as required by the CBA. (Dkt. 148 at 4-7.) In support, Plaintiff purports to rely upon two undisputed facts: (1) VanDagens's sibling relationship with a Ford employee; and (2) VanDagens's findings of fact in favor of Ford. Although the Court allowed that claim to survive a motion to dismiss, it warned Plaintiff that she "will need to point to evidence of VanDagens's bias on summary judgment." *Campbell-Salahuddin v. Ford Motor Co.*, No. 18 C 268, 2019 WL 172756, at *7 (N.D. Ill. Jan. 11, 2019). But despite an ample opportunity provided through a period of discovery, Plaintiff has since produced no evidence to substantiate this claim.

To succeed in vacating an award based on arbitrator bias, Plaintiff must identify "evident partiality," Federal Arbitration Act, 9 U.S.C. § 10(a)(2), which is defined as "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Harter v. Iowa Grain Co.,* 220 F.3d 544, 553-54 (7th Cir. 2000); *cf. Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 724-25 (7th Cir. 2002) (internal quotations omitted) (district courts can look to the Federal Arbitration Act as guidance to fill in procedural gaps in LMRA actions).

Even taken in the light most favorable to Plaintiff, the record lacks any evidence showing VanDagens's partiality. To begin, it bears note that Judge Kendall already rejected Plaintiff's argument that "any labor arbitrator whose brother is an employee of a grievant's employer is automatically unqualified as biased or partial." (Dkt. 39 at 7 ("[Plaintiff] does not provide any binding precedent or analogous persuasive authority to support this sweeping legal conclusion.") On the merits, it is undisputed that VanDagens's brother had no connection to Plaintiff's termination or the arbitration. Plaintiff also admitted that VanDagens was highly qualified and offered UAW "no reason to disqualify [her] from hearing arbitration matters with the Ford/UAW Office of the Umpire simply because her brother worked for Ford." (Pl's Resp. USOF ¶ 26.) Plaintiff further acknowledged that VanDagens "immediately" disclosed her sibling relationship when approached by Defendants. (Dkt. 148 at 5.) *Cf. Hobet Mining, Inc., v. Int'l Union, United Mine Workers Am.*, 877 F. Supp 1011, 1021 (S.D. W. Va. 1994) (declining to presume partiality even where an arbitrator failed to disclose a sibling relationship).

Without evidence to support the foundational element that VanDagens was biased, Plaintiff's claim that UAW breached its duty of fair representation by concealing that bias must fail. *See Yeftich*, 722 F.3d at 917 (union lied to the plaintiffs about grievances being processed); *Rogers v. Jewel Food Stores, Inc.*, 2014 WL 4913673, *5 (N.D. Ill. Sept. 30, 2014) (union failed to inform plaintiff that it was not investigating her grievance).

11

This leaves only Plaintiff's accusations of arbitrator bias based solely on adverse findings. But "an adverse ruling alone is not 'direct, definite, and demonstrable bias' sufficient to constitute 'evident partiality.'" *Hurn v. Macy's, Inc.*, 728 F. App'x 598, 599 (7th Cir. 2018) (nonprecedential disposition); *Thomas v. Reese*, 787 F.3d 845, 849 (7th Cir. 2015). Absent a sufficient showing of partiality, based on other grounds, VanDagens's adverse factual findings are not grounds for bias allegations. *See Mical v. Glick*, 581 F. App'x 568, 571 (7th Cir. 2014) (nonprecedential disposition). And because arbitrators "are not bound by the rules of evidence," *Slaney v. The Int'l Amateur Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) (quoting *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203-04 n.4 (1956)), that VanDagens considered potential hearsay evidence does not bear on the Section 301 analysis.

In short, Plaintiff has failed to show that VanDagens was evidently partial against Plaintiff. As a matter of law, therefore, the UAW could not have breached its duty of fair representation by selecting VanDagens to oversee the arbitration. Accordingly, the UAW is entitled to summary judgment on this issue.

> 2. *Plaintiff Has Not Established That UAW's Conduct Was Otherwise Arbitrary, Discriminatory, or in Bad Faith.*

Plaintiff also argues that UAW breached its duty of fair representation by failing to present evidence that would have confirmed Plaintiff's version of the events. (Dkt. 148 at 9.) Specifically, Plaintiff challenges UAW's failure to present swipe card and video records from the Plant and to call Williams to testify at the hearing. (*Id.* at 9-12.) But, once again, Plaintiff cites no evidence to support her claim that the UAW acted in an arbitrary, discriminatory, or bath faith manner. The Court reviews the

12

union's decisions for "arbitrary," and "discriminatory or in bad faith" conduct separately.

A union's actions are considered arbitrary only if "in light of the factual and legal landscape," they fall "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78 (1991); *see also Garcia*, 58 F.3d at 1176 ("What is required to be shown goes considerably beyond the requirements of a malpractice suit").

Nothing in the record suggests the UAW acted arbitrarily—irrationally—in processing Plaintiff's grievance. On the contrary, the UAW's decision not to call an adverse witness like Williams was squarely rational. It is undisputed that Williams previously provided a written statement corroborating Lee's account of the assault and directly contradicting Plaintiff. (Dkt. 40 ¶ 182; Pl's Resp. USOF ¶ 31.) That Plaintiff now predicts Williams would have withdrawn that statement and provided testimony consistent with Plaintiff's version had Williams testified is unsubstantiated speculation.[4] As a result, Plaintiff cannot establish that the outcome of the arbitration would have been different but for the UAW's decision not to call Williams. Plaintiff also fails to show that UAW's failure to present video footage or

---

[4] This speculation originates in Plaintiff's Third Amended Complaint where she asserts that "Ms. Williams told UAW Representative 'Dede' that she refused to testify and corroborate Ms. Lee's allegations at the Arbitration hearing because Ms. Lee's allegations were untrue." (Dkt. 40 ¶ 185.) In addition to being inadmissible hearsay within hearsay, this statement is entirely unsupported by the evidence in the record. Even if true, such a fact does not make UAW's strategic decision not to call the witness irrational. A witness who recants a signed, written statement and later corroborates an opposite version of the events offers little value in a largely credibility-based determination, as was the case here.

13

swipe card records amounts to "an egregious disregard" of Plaintiff's rights to constitute a breach of the union's duty. *See Garcia*, 58 F.3d at 176.

First, there is no evidence that video footage existed that would have vindicated Plaintiff's account of the incident. Despite having had an opportunity to conduct discovery, Plaintiff offers the Court nothing but supposition that the Plant's video footage—which Plaintiff acknowledges did not capture the incident (Dkt. 148 at 10)—would establish when Plaintiff arrived the Plant "and who, if anyone, she interacted with that day." Leaving aside whether the video ever existed, Plaintiff does not argue that the video would have been exculpatory as to the physical incident. It is hard to see how Plaintiff could argue that plausibly when Plaintiff admits that the video, if any existed, would not have captured the incident. (Dkt. 148 at 10.) Plaintiff thus cannot establish that the outcome of the arbitration would have been different but for the UAW's decision not to show the largely irrelevant (and potentially non-existent) video footage.

Second, there is no evidence that the swipe card records, if presented by UAW, would have been dispositive either. Plaintiff suggests only that "[a] review of Ford's swipe system would . . . support [Plaintiff's] defense" (Dkt. 148 at 10), but Plaintiff does not present any evidence to that effect. Instead, Plaintiff contends that, if the swipe records were presented at the hearing, and if they revealed that Plaintiff had arrived late to work on the day of the incident, then VanDagens might not have found that Plaintiff was in the stairwell. (Dkt. 148 at 10.) Even reviewed in the light most favorable to Plaintiff, there are too many "ifs" in that sequence to create a genuine

14

issue of fact. Plaintiff has thus failed to show that the UAW's conduct was arbitrary in violation of its duty to fairly represent Plaintiff. *See Taha v. Int'l Brotherhood Teamsters, Local 781*, 947 F.3d 464, 471 (7th Cir. 2020) ("[f]ailure to present favorable evidence during the grievance process constitutes a breach of duty only if that evidence probably would have brought about a different situation") (internal quotations omitted).

Nor can Plaintiff show that the UAW's conduct was "discriminatory" or "in bad faith." To establish discrimination or bad faith, Plaintiff "must adduce substantial evidence of fraud, deceitful action or dishonest conduct." *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 692 (7th Cir. 1982). Plaintiff has failed to do so here. Instead, Plaintiff simply argues that UAW intentionally concealed VanDagens's conflict of interest "in bad faith." (Dkt. 148 at 8.) But concealed information is generally insufficient even to plausibly state a claim under Section 301. *See Yeftich*, 722 F.3d at 917 (union lied to the plaintiffs about grievances being processed); *Rogers*, 2014 WL 4913673, at *5 (union failed to inform plaintiff that it was not investigating her grievance). In any event, Plaintiff's "[b]are assertions of the state of mind required for the claim [of "bad faith"] must be supported with subsidiary facts." *Yeftich*, 722 F.3d at 916. Instead, Plaintiff produces bupkis. For that reason, the Court must find that UAW's conduct was neither "discriminatory" nor "in bad faith."

Plaintiff's claim is, in essence, that UAW ought to have been a more effective advocate in the grievance proceeding. But mere errors of judgment (assuming any were present here) are insufficient to rise to the level of unfair representation.

*Cannon v. Consol. Freightways Corp.*, 524 F.2d 290, 294 (7th Cir. 1975). Accordingly, Plaintiff's claim that UAW breached its duty of fair representation by making certain strategic decisions in the arbitration fails as a matter of law.

### B. Ford Did Not Breach the CBA.

Given that the elements in a Section 301 claim are "inextricably interdependent," for Plaintiff to recover from either UAW or Ford she must prevail against both. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164-65 (1983). Because Plaintiff has failed to show that UAW breached its duty of fair representation, Plaintiff may not challenge the outcome of the labor arbitration award and the Court need not determine whether Ford breached the CBA. The Court will nevertheless briefly explain why the second element of Plaintiff's section 301 claim must also fail as a matter of law.

Binding precedent states that "courts have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers*, 363 U.S. at 599. Courts must resolve any reasonable doubts about whether the award draws its essence from the collective bargaining agreement in favor of enforcing the award. Accordingly, the Court may set aside the award only if "there is no possible interpretive route to the award, so a noncontractual basis can be inferred." *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991).

16

Nothing in the record suggests VanDagens relied on a noncontractual basis for the award. The CBA provided Ford with "the sole right to discipline and discharge employees for cause" (Pl's Resp. FSOF ¶¶ 35-36) and specifically identified binding arbitration before a person jointly selected by Ford and the UAW as the ultimate dispute resolution stage for claims arising out of the CBA—including determinations of "just cause" for termination. (Pl's Resp. FSOF ¶¶ 37-43; Pl's Resp. USOF ¶ 14.) VanDagens was jointly selected by Ford and the UAW to preside over the arbitration and held that Ford had just cause to terminate Plaintiff. (Pl's Resp. FSOF ¶ 52.) Just cause "is a flexible concept, embodying notions of equity and fairness, and is certainly open to interpretation by the arbitrator." *Arch of Ill.*, 85 F.3d at 1294. VanDagens's findings are thus entitled to "extreme deference" that the Court may not displace here. *United Food and Com. Workers, Local 1564*, 569 F.3d at 754. Accordingly, Plaintiff's claim that Ford breached the CBA by terminating her employment without cause must fail as matter of law.

## IV. CONCLUSION

As the record reflects, there is no material issue for a finder of fact to decide, and Defendants are entitled to judgment in their favor as a matter of law. Accordingly, Defendants' motions for summary judgment (Dkts. 102, 109) are granted.

SO ORDERED in No. 18-cv-00268.

Date: October 12, 2021

JOHN F. KNESS
United States District Judge